OPINION OF THE COURT
Arthur E. Blyn, J.
Motion by defendants pursuant to CPLR 3212 for summary judgment dismissing the complaint.
This is an action for personal injuries allegedly sustained by plaintiff on July 25,1978, when he stepped into a hole in the floor of a building in Queens, New York, which was owned by defendants. At the time of the accident plaintiff was employed by a subsidiary of Borden Corporation, the lessee at the premises. Borden had leased the premises from defendants under a “net lease” which provided that the tenant was responsible for maintenance and repairs, but afforded defendants the right to enter upon the premises for the purposes of inspecting same and making repairs if deemed necessary.
It is well established that, in the absence of a statutory requirement or an express covenant to repair, an owner of leased real property has no implied obligation or duty to make repairs to the leased premises. (Howell v Gagliano, 52 AD2d 1040.) Although the instant defendants did not covenant to repair the premises leased to Borden, plaintiff contends that defendants breached their statutory duty imposed by the portion of the Administrative Code of the City of New York, commonly known as the “Building *808 Code”. (Administrative Code of City of New York, § C26100.0 et seq.)
The Administrative Code contains the following provisions:
“§ C26-105.1 Maintenance requirements. —All buildings and all parts thereof shall be maintained in a safe condition. All service equipment, means of egress, devices, and safeguards that are required in a building by the provisions of this code or other applicable laws or regulations, or that were required by law when the building was erected, altered, or repaired, shall be maintained in good working order.
“§ C26-105.2 Owner responsibility. — The owner shall be responsible at all times for the safe maintenance of the building and its facilities.”
Clearly, on their face these provisions required the instant defendants to maintain the premises leased to Borden in good repair. Defendants argue, however, that when these provisions are taken in the context of the entire Building Code, they are applicable only to buildings under construction or, in the alternative, to the maintenance of multiple (i.e., residential) dwellings. A review of the pertinent provisions of the Building Code shows defendants’ argument to be without merit.
The introductory sections of the Building Code state as follows:
“§ C26-100.2 Purpose. — The purpose of this code is to provide reasonable minimum requirements and standards, based upon current scientific and engineering knowledge, experience and techniques, and the utilization of modern machinery, equipment, materials, and forms and methods of construction, for the regulation of building construction in the city of New York in the interest of public safety, health and welfare, and with due regard for building construction and maintenance costs.
“§ C26-100.3 Scope. — This code shall apply to the construction, alteration, repair, demolition, removal, maintenance, occupancy and use of new and existing buildings in the city of New York, including the installation, alteration, repair, maintenance and use of service equipment therein, *809 except as provided in section 1803 (6) of the New York city charter.” (Emphasis added.)
There is nothing in the above-cited sections to indicate any intent to limit application of the Building Code to building construction or particular types of buildings (such as multiple dwellings). On the contrary, the maintenance, use and occupancy of all existing buildings is specifically included in the scope of the Building Code. The court further notes that the inclusion of these items in the stated scope of the code is neither accidental nor incidental, as the code contains separate and distinct subarticles setting forth the requirements as to the maintenance, use and occupancy of existing buildings.
Although the maintenance requirements imposed by the Building Code do not distinguish between owners who have leased their property and those who have not, it is well settled that an owner-lessor may be held liable for breach of such statutory requirements only if he has retained some degree of control of the property. (See Worth Distr. v Latham, 59 NY2d 231; Ritto v Goldberg, 27 NY2d 887; Howell v Gagliano, supra.) The control test has not, as defendants contend, been dispensed with by Putnam v Stout (38 NY2d 607), which merely held the issue of control to be irrelevant in situations involving an express covenant to repair by the lessor. It is clear that the control test remains viable in cases where there is no covenant to repair.
The fact that the instant defendants retained the right to inspect and/or repair the premises leased to Borden is certainly an indicia of control. (See Worth Distr. v Latham, supra, at p 238; Tkach v Montefiore Hosp. for Chronic Diseases, 289 NY 387.) The frequency and purpose of defendants’ visits to the premises during the term of the lease is also relevant to the issue of control; the court notes, however, that at the deposition of defendant John Yellin his counsel did not permit several questions designed to elicit that information, except those limited to a narrow period prior to plaintiff’s accident.
On this record, the court is unable to determine, as a matter of law, whether defendants did or did not have sufficient control over the premises to subject them to or *810 exclude them from liability for breach of the maintenance requirements contained in the Building Code. In addition, questions of fact exist concerning the reasonableness of defendants’ conduct under the circumstances, which are best resolved by the trier of fact. (Johannsdottir v Kohn, 90 AD2d 842; Regnal Realty Corp. v McBride Transp., 25 AD2d 703.)
For the foregoing reasons, defendants’ motion for summary judgment is denied.