*563 OPINION OF THE COURT
Hancock, Jr., J.
This appeal presents two questions: (1) whether the owner of a leased commercial building covered by the New York City Administrative Code which has no obligation for repairing or maintaining the premises but retains the right to reenter and inspect and to make needed repairs at tenant’s expense may be held responsible for injuries due to a defect in the premises; and (2) if the owner may be held responsible, whether it is entitled to shift the entire responsibility to the tenant under principles of common-law indemnity or merely to contribution from the tenant for its share of the damages apportioned in accordance with their respective degrees of fault (CPLR art 14; Dole v Dow Chem. Co., 30 NY2d 143).
Plaintiff fell and sustained injuries on August 29, 1979 while descending a flight of stairs on her way to the bathroom in the grocery store operated by third-party defendant Daitch-Shopwell (Daitch) where she worked as a meat packer. Daitch occupied the premises under a long-term lease from the owner, Village East. Plaintiff sued the owner-lessor, Village East, and recovered a verdict for her injuries which the jury apportioned on the basis of fault — 60% against plaintiff and 40% against Village East. In Village East’s third-party action against Daitch (its tenant and plaintiff’s employer) the same *564 jury apportioned Village East’s 40% share of the verdict, 33%% against Village East and 66%% against Daitch. Village East’s claim for 100% recovery against Daitch on the basis of common-law indemnity was denied.[1] The Appellate Division affirmed, without opinion, and Village East and Daitch have appealed.
 Both Village East and Daitch contend that plaintiff should not have recovered at all against Village East under established law pertaining to the liability of an owner out of possession. Village East argues alternatively that if the judgment against it is affirmed it should have a recovery over against Daitch in the full amount. For reasons to be discussed we reject these arguments and conclude that the order of the Appellate Division should be affirmed in all respects.
I
Plaintiff’s theory of recovery against Village East is that the stairs were defective and constituted a hazardous condition because they were dimly lit and because the handrail was too close to the wall. After descending three or four steps, plaintiff said her hand got caught "and, like it threw me”. She missed a step and "it was like dark in front of me, and I went down the stairs, all the way down.”
The staircase had been built by Daitch about 10 years before the accident. Under the terms of its lease with Village East, Daitch was required to maintain the premises "and at its sole cost and expense make all repairs thereto as and when needed to preserve them in good working order and condition.” For its part, Village East retained "a right to enter the demised premises at all times” for the purpose of inspection and the right to make repairs at tenant’s expense "if the tenant fail[ed] to make” them.[2] There was no evidence that Village East had inspected the premises or that it had actual knowledge of the claimed defect.
Because the property where the accident occurred is located in Manhattan, the Administrative Code of the City of New *565 York[3] regulates the duties of the landlord and tenant. The Administrative Code charges the owner with responsibility "at all times for the safe maintenance of the building and its facilities” (Administrative Code § C26-105.2 [now § 27-128]). The owner must maintain "[a]ll buildings and all parts thereof’, including "[a]ll service equipment, means of egress, devices and safeguards that are required in the building by the provisions of this code or other applicable laws or regulations or that were required by law when the building was erected, altered or repaired” in good working order (Administrative Code § C26-105.1 [now § 27-127]). With respect to interior staircases the Code requires that "[h]andrails shall provide a finger clearance of IVi in.” (Administrative Code § C26604.8 [f] [now § 27-375 (f)]), and for lighting, the Code specified at the time of the mishap that "corridors and exits shall be provided with artificial lighting facilities” furnishing at least five foot candles of illumination (Administrative Code § C26605.1 [a] [now § 27-381 (a); new section now requires only two foot candles of illumination]).
II
Village East’s liability to plaintiff, we conclude, is controlled by our decisions in Tkach v Montefiore Hosp. (289 NY 387) and Worth Distribs. v Latham (59 NY2d 231) dealing with the liability of an owner out of possession under Multiple Dwelling Law § 78. In Tkach v Montefiore Hosp. (supra) a suit was brought against the owner out of possession and the lessee of an apartment building for injuries sustained when an apartment tenant was struck by falling plaster. The lease required the tenant to keep the property in repair but gave the landlord the right at any time to enter and examine the premises. Although the owner had not inspected the premises and had no actual knowledge of the defect, the court held that its retention of the right to enter and inspect was a sufficient basis to sustain liability and that the owner should be charged "with constructive notice of defects in all those parts of the *566 building into which, by authority of the written lease, [it] may enter” (id., at 390).
In Worth Distribs. (supra) several actions for personal injuries, wrongful death and property damage arising out of the partial collapse of a hotel building were brought against the net lessee of a hotel and against the owner out of possession because of its statutory responsibility to keep the premises "in good repair” (Multiple Dwelling Law § 78). The net lease contained a provision permitting the owner to enter the premises for inspection and repairs. In holding that the owner should share liability for the damages with the net lessee we said: "Although an owner will not be held liable under section 78 where it has completely parted with possession and control of the building, the owners here reserved the right under the terms of the net lease to enter for inspection and repairs. This reservation constituted a sufficient retention of control to subject the owners to liability” (Worth Distribs. v Latham, supra, at 238).
We see no basis for distinguishing these cases. Like the owners of the buildings in Tkach and Worth Distribs. which were specifically bound by statute to keep the premises "in good repair” (Multiple Dwelling Law §78), Village East, as owner, had obligations under the Administrative Code which, it has been held, has the force and effect of statute (see, n 3, supra). Village East had both a general responsibility for safe maintenance of the building and its facilities (Administrative Code §§ C26-105.1, C26-105.2 [now §§ 27-127, 27-128]) and specific obligations pertaining to minimum handrail clearance (Administrative Code § C26-604.8 [now § 27-375]) and minimum illumination (Administrative Code § C26-605.1 [a] [now § 27-281 (a)]). Also, as in Tkach and Worth Distribs., Village East, as owner-lessor, could enter the premises "at all times” to inspect. In addition, it had the right to make repairs "if the tenant fail[ed] to make” them and to change the "arrangement and/or location” of the stairs.
Although there is no evidence that Village East had actual notice of the claimed dangerous condition, its right to reenter the premises is sufficient to charge it with constructive notice (Tkach v Montefiore Hosp., supra, at 390). Its failure to act to remedy the defect as it could have done under *567 the lease is the basis for its liability under the various provisions of the New York City Administrative Code.[4]
Ill
Village East’s claim for a 100% recovery in its third-party action against Daitch proceeds on the theory of common-law indemnity. Village East contends that because Daitch constructed the stairs, assumed the duty for maintenance and repairs under the lease and, as tenant, had a total and unrestricted right of possession in the premises, the entire responsibility for the safe condition of the stairs was that of Daitch. Thus, its sole obligation arose from the nondelegable duty of an owner under the pertinent provisions of the New York City Administrative Code and this obligation has been assumed by Daitch under the lease. Village East maintains, therefore — relying principally on Rogers v Dorchester Assocs. (32 NY2d 553) — that it should have full recovery over.
As we have often noted since our adoption of the rule permitting equitable apportionment of damages among tortfeasors in Dole v Dow Chem. Co. (30 NY2d 143, supra), neither Dole nor its codification in CPLR article 14 altered the "basic and satisfactory principles of common-law indemnification” (Rogers v Dorchester Assocs., supra, at 565-566; see, e.g., Garrett v Holiday Inns, 58 NY2d 253, 263; D’Ambrosio v City of New York, 55 NY2d 454, 462; Riviello v Waldron, 47 NY2d 297, 306). In Rogers (supra, at 566), we explained that the "apportionment rule applies to those who in fact share responsibility for causing the accident or harm, and does not extend further to those who are only vicariously liable, as the employer of a negligent employee, the owner of a motor vehicle operated by a negligent driver, or * * * the owner of a building who contracts with an independent contractor exclusively responsible for maintenance of the building or parts of it”. Thus, where one joint tort-feasor "is held liable solely on account of the negligence of another, indemnification, not *568 contribution, principles apply to shift the entire liability to the one who was negligent (see, also, Logan v Easterly, 34 NY2d 648)” (D’Ambrosio v City of New York, supra, at 462).
Generally, apportionment among tort-feasors, rather than a shifting of the entire loss through indemnification, is the proper rule "when 'two or more tort-feasors share in responsibility for an injury, in violation of duties they respectively owe[ ] to the injured person’ (Smith v Sapienza, 52 NY2d 82, 87; Holodook v Spencer, 36 NY2d 35; Rogers v Dorchester Assoc., 32 NY2d 553)” (Garrett v Holiday Inns, supra, at 258).[5] The rule gives effect to principles of equity and policy "that responsibility for damages to an injured person should be borne by those parties responsible for the injury, in proportion to their respective degrees of fault (Dole v Dow Chem. Co., 30 NY2d 143, 152)” (id., at 258). Whether apportionment or common-law indemnity should be applied in a given case, however, requires a careful analysis of the theory of recovery against each tort-feasor.
In Rogers the owner and manager of an apartment building, held liable under Multiple Dwelling Law § 78 for injuries incurred in an elevator accident, were permitted common-law indemnity against Otis Elevator Company because Otis, under the maintenance contract, had assumed "the exclusive duty to maintain the elevators” and "the owner and manager had the right * * * to look to Otis to perform their entire duty to plaintiff” (Rogers v Dorchester Assocs., supra, at 563; emphasis added). On the other hand, in D’Ambrosio v City of New York (55 NY2d 454, 463, supra) we concluded that apportionment of damages rather than indemnity was the appropriate rule. There, a passerby tripped on a watermain valve cover maintained in the public sidewalk for the special benefit of the abutting owner. We held that by permitting the valve cover to fall into disrepair "both the municipality and the landowner * * * breached their respective duties to members of the public, and both [could] be made to respond in damages to those injured by the defective condition” (id., at 463). In rejecting the city’s contention that it should have full recovery from the abutting owner, we emphasized that the city was not *569 "being compelled to pay for the wrong of another; it was simply being held liable for its own failure to exercise reasonable care” (id,., at 463). In D’Ambrosio, it must be noted, there was no contractual assumption of full responsibility for maintaining the instrumentality as in Rogers.
Here, the liability of Village East is not derivative (cf., Riviello v Waldron, 47 NY2d 297, 306, supra). The award of damages does not depend solely on the negligent act or omission of another (cf., Rogers v Dorchester Assocs., supra, at 563). On the contrary, Village East is held responsible for failure to perform a duty owed directly by it to plaintiff — a duty to remedy the defect, something it was permitted to do under the lease and obliged to do under the Administrative Code. Indeed, it is only because of the existence of this direct duty that Village East, as owner out of possession, is responsible. (See discussion of Worth Distribs. v Latham and Tkach v Montefiore Hosp., part II, supra.) Unlike the maintenance contract between the owner and Otis in Rogers, the lease between Village East and Daitch did not totally divest Village East of control over or responsibility for repairs and maintenance. The lease specifically reserved the right to inspect the premises and to make repairs at tenant’s expense, if needed, and it is on the basis of this retention of control and responsibility that Village East has been held liable for breach of a duty owed directly to plaintiff. Under these circumstances, contribution and not common-law indemnity is the applicable rule (D’Ambrosio v City of New York, 55 NY2d 454, 463, supra; see, Trustees of Columbia Univ. v Mitchell/Giurgola Assocs., 109 AD2d 449, 453; County of Westchester v Becket Assocs., 102 AD2d 34, 45-48; Prosser and Keeton, Torts § 51, at 341).
The order of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Simons, Kaye, Titone and Bellacosa concur; Judge Alexander taking no part.
Order affirmed, with costs.

.Plaintiff’s complaint against Haven Plaza Housing Development Fund Co., Inc., an owner of part of the building, was dismissed on the ground that Haven Plaza did not own the property on which the accident occurred.

.Other terms in the lease under which the owner retained some measure of control over and responsibility for the premises are landlord’s "right at any time * * * to change the arrangement and/or location of * * * stairs”, and its duty to keep "all structural portions of the building in good condition.”

.The Administrative Code is a codification and restatement of applicable "statutes and laws, general, special and local” (Administrative Code former § 1-0.0). The sections of the Code pertinent to this appeal are found in "Part II, Building Code” (now § 27-101 et seq.). In Hart v City Theatres Co. (215 NY 322, 326) it was held that the "Building Code [of the Administrative Code] has all the force of a statute in the city of New York” (see, Phelan v Yellin, 122 Misc 2d 807; Bressler v Amsterdam Operating Corp., 194 Misc 76, 79).

.Village East contends that the New York City Administrative Code has only the force of an ordinance and that absent a duty imposed by statute there would be no liability under Putnam v Stout (38 NY2d 607). Because the Administrative Code provisions have the force of a statute, the controlling decisions are Worth Distribs. v Latham (59 NY2d 231) and Tkach v Montefiore Hosp. (289 NY 387). We do not reach the question whether, absent a duty imposed by statute, there would be a sufficient retention of control for liability (see, Putnam v Stout, supra, at 614, n 4; Howell v Gagliano, 52 AD2d 1040).

.While ordinarily contribution rights arise when damages are sought to be apportioned among tort-feasors each of whom owes a duty directly to the injured party, this is not invariably so. In the unusual case the right to apportionment may arise from the duty owed from the contributing party to the party seeking contribution (see, e.g., Garrett v Holiday Inns, 58 NY2d 253, 258-263; Nolechek v Gesuale, 46 NY2d 332, 338, 341).