Titone, J.
(dissenting). The majority concludes that the City may invoke the common-law doctrine of indemnification to shift the entire responsibility for the pedestrian’s injuries to defendant solely because of defendant’s undertaking to maintain the sidewalk adjacent to its lot in safe condition. Further, in its effort to reconcile this ruling with the court’s recent decision in Guzman v Haven Plaza Hous. Dev. Fund Co. (69 NY2d 559), which involved a similar undertaking, the majority has seized upon the distinction it perceives in defendant’s inducing the City to refrain from making stated repairs by such an explicit undertaking (majority mem, at 959).
In my view this analysis is unsound, because it rewards the City for abdicating its municipal responsibilities on the strength of a bare promise by a private citizen to act in the City’s stead. Since recent decisions of this court, the governing statute, and public policy preclude such a result, I respectfully dissent and cast my vote for reversal.
Initially, there can be little dispute about the basic difference between common-law indemnification and the more recently recognized right of contribution, which was codified in CPLR article 14. As we have repeatedly observed, "where one joint tort-feasor 'is held liable solely on account of the negligence of another, indemnification, not contribution, principles apply to shift the entire liability to the one who was negligent’ ” (Guzman v Haven Plaza Hous. Dev. Fund Co., supra, at 567-568, quoting D’Ambrosio v City of New York, 55 NY2d 454, 462; see, e.g., Glaser v Fortunoff of Westbury, 71 NY2d 643; Rogers v Dorchester Assocs., 32 NY2d 553, 556).
In Rogers v Dorchester Assocs. (supra), on which the majority relies, we concluded that a property owner could recover against an independent contractor who promised to maintain the owner’s elevator on a theory of implied indemnification. We stated that contribution "applies to those who in fact share responsibility for causing the accident or harm, and does not extend further to those who are only vicariously liable [such as] the owner of a building who contracts with an independent contractor exclusively responsible for maintenance of the building or parts of it” (id., at 566). Thus, Rogers, at first blush, would seem to support the majority’s position.
In D’Ambrosio, however, this court abrogated the "special *961 benefit” rule and held that the City could not seek common-law indemnification from the adjacent landowner for "trip and fall” damages resulting from a poorly maintained sidewalk appurtenance, at least in the absence of an undertaking by the property owner "to repair for the benefit of the municipality” (55 NY2d, at 463, supra). In denying the City the right to shift the entire burden of liability to the landowner, the court in D’Ambrosio observed: "If the municipality pays the damages, it is not being compelled to pay for the wrong of another; it is simply being held liable for its own failure to exercise reasonable care” (55 NY2d, at 463, supra).
The effect of a specific undertaking to repair was considered even more recently in Guzman v Haven Plaza Hous. Dev. Fund Co. (supra). In that case, we were called upon to consider whether an out-of-possession landowner held liable for injuries occurring on its premises could seek common-law indemnification from its tenant, which had covenanted to keep the premises in good repair. Despite this express and specific undertaking, we held that the landowner could not claim indemnification from the tenant since its liability was not purely derivative. Rather, the landowner’s responsibility arose from a duty it owed to the injured party: "a duty to remedy the defect, something it was permitted to do under the lease and obliged to do under the Administrative Code” (69 NY2d, at 569, supraX[1]
Thus, the teaching of Guzman is that the mere existence of an undertaking by another to repair and maintain safe conditions is not alone a sufficient ground for permitting the party with primary responsibility to shift the entire burden of liability away from itself. In addition to the existence of such an undertaking, the court must consider whether the agreement conferred exclusive control over the premises on the promisor and totally divested the promisee of its own responsibility for the premises’ safety.
Here, as the majority acknowledges and the City concedes, New York City Charter former § 230 imposed on the City a nondelegable duty to maintain the sidewalk in a safe condi *962 tion (D’Ambrosio v City of New York, supra; Russell v Village of Canastota, 98 NY 496). Under that statute, however, the City also had a duty to make certain that the property owner kept the sidewalks safe for pedestrian traffic, and a further duty to make repairs itself, in the event the property owner failed to fulfill its statutory responsibilities. Hence, its liability to the injured pedestrian was not solely derivative (cf., Riviello v Waldron, 47 NY2d 297), but rather was based on its own breach of the duty of care that it owed to the pedestrian. Thus, as in Guzman, the undertaking by a third party did not give rise to a common-law right of indemnification unless that undertaking completely divested the City of all responsibility and control.[2]
That question obviously must be answered in the negative. To suggest that the City may be completely divested of all responsibility and control in this situation is inconsistent with the fundamental notion of government’s ultimate duty to maintain its public byways in reasonably safe condition.
Equally strong public policy objections exist in relation to the majority’s suggestion that the City should be permitted to claim indemnification because it was induced by defendant’s undertaking to refrain from making its own repairs. Further, the position the majority espouses runs counter to the policies expressed in New York City Charter former § 230 (now codified at Administrative Code of City of New York § 19-152). Under that provision, the City was authorized to direct a lot owner to construct or repair an adjacent sidewalk. If the owner failed to comply, the City was then authorized to perform the work itself and impose the cost on the lot owner. Nothing in this provision suggests that the City may, by agreement, or inducement, abdicate its responsibility for the sidewalk’s safety to the lot owner. To the contrary, the terms of the provision suggest that even where the lot owner’s parallel obligation to repair the sidewalks is invoked, the City retains an ongoing duty to supervise the lot owner’s performance and intervene in the event that such performance is inadequate.
In short, given its responsibilities as a municipality, the City *963 simply has no right to rely on a private citizen’s promise to keep the streets in good repair. Accordingly, the fact that the defendant in this case asked the City to refrain from carrying out its duties is of no legal significance, and cannot be used by the City as a basis for shifting its liability. Even assuming that the City was lulled into inaction by the defendant’s promise, it still had a continuing duty to take reasonable affirmative steps to keep the sidewalk safe, but it apparently failed to carry out its obligation to ensure that defendant property owner was properly performing in accordance with its undertaking. Since that undertaking did not, and could not, divest the City of the duty imposed on it by law to maintain the public sidewalks in safe condition, "contribution and not common-law indemnity is the applicable rule” (Guzman v Haven Plaza Hous. Dev. Fund Corp., supra, at 569). Consequently, the City’s complaint should have been dismissed insofar as it seeks recovery under a common-law indemnification theory. Its remedy is a claim over for contribution based on apportionment of fault pursuant to Dole v Dow Chem. Co. (30 NY2d 143) and CPLR article 14.
Chief Judge Wachtler and Judges Simons, Kaye and Bellacos a concur; Judge Titone dissents and votes to reverse in an opinion in which Judges Alexander and Hancock, Jr., concur.
Order affirmed, with costs, in a memorandum.

. The landowner was "permitted to” remedy defects under a lease clause that gave it a right to reenter and make necessary repairs if the tenant failed to do so (69 NY2d, at 564; see also, id., n 2). The landowner’s statutory obligation to repair arose from Administrative Code of the City of New York § 27-128, which made the landowner responsible "at all times for the safe maintenance of the building and its facilities” (see, 69 NY2d, at 565).

. In response to the majority’s suggestion that our dissenting position forecloses use of common-law or "implied” indemnification in cases involving nondelegable duties, we stress that our conclusion that the City cannot claim indemnification flows not from the nature of its duty to the injured plaintiff but rather from the fact that its liability to the plaintiff was not purely vicarious.