INSURANCE COMPANY OF NORTH AMERICA, Plaintiff,

v.

HISTORIC COHOES II, et al., Defendants.

No. 86–CV–1107 (CGC).

United States District Court, N.D. New York.

Feb. 13, 1995.

Mary Ann D. Allen, Bouck, Holloway, Kiernan and Casey, Albany, NY, for Insurance Co. of North America.

John H. Beaumont, Rowley, Forrest, O'Donnell & Hite P.C., Albany, NY, for Historic Cohoes II.

J. Christopher Kohn, Robert M. Hollis, Brendan Collins, Civ. Div., U.S. Dept. of Justice, Washington, DC, for the Secretary of Housing and Urban Development.

McClung, Peters & Simon, Albany, NY, for Wayne L. Weaver & Associates, Inc. and Wayne L. Weaver.

Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, for Boston Architectural Team, Inc.

Bond, Schoeneck & King, Albany, NY, for Basser Builders, Inc.

Murry S. Brower, Arthur H. Thorn, Thorn and Gershon, Albany, NY, St. Paul Fire & Marine.

Fred J. Hutchison, Donohue, Sabo, Varley & Armstrong, P.C., Albany, NY, for Continental Cas. Co. and Beltrone Const. Co.

Thomas M. Hirschen, Friedman, Hirschen, Miller, Coughlin & Campito, P.C., Schenectady, NY, for A. Ritz Demolition and Wrecking, Inc.

# MEMORANDUM DECISION

CHIN, District Judge.[1]

The following motions are before the Court:

Insurance Company of North America ("INA") moves for summary judgment on its claim for a declaratory judgment that it has no obligation under the insurance policy at issue in this case to make any payments upon the alleged loss in question.

The Department of Housing and Urban Development ("HUD") moves for summary judgment dismissing the claims asserted against it by Beltrone Construction Co., Inc. ("Beltrone"), Continental Casualty Company ("Continental"), Boston Architectural Team, Inc. ("BAT"), A. Ritz Demolition and Wrecking Inc. ("Ritz") and Wayne L. Weaver ("Weaver").

St. Paul Fire and Marine Insurance Company ("St. Paul") has moved for summary judgment dismissing the third-party claims brought against it by Historic Cohoes II (the "Owner") and HUD. St. Paul has also moved for dismissal of cross-claims asserted against it by BAT, Beltrone, Continental and Ritz.

Beltrone and Continental move for partial summary judgment dismissing all tort, contribution and common law indemnification claims brought against them.

Ritz moves for partial summary judgment dismissing the tort, contribution and common law indemnification claims brought against it.

## Background

The Victor–Carrybag buildings, which are the subject of this litigation, were built in 1894 in Cohoes, New York. For many years they were used as textile mills and factories; they were abandoned in the late 1960's.

In approximately 1982, the Owner purchased the buildings and renovated them for purposes of providing HUD Section 8 housing for the elderly and disabled. *See* Section 8 of the Housing Community Development Act of 1974, 42 U.S.C. § 1437f. The project contemplated the creation of over 100 rent-

---

1. United States District Judge for the Southern District of New York, sitting by designation.

subsidized housing units for senior citizens and disabled individuals.

BAT was hired to provide architectural services. Beltrone was hired as general contractor, and it executed a performance bond issued by Continental. Beltrone in turn hired Ritz as a subcontractor to do the demolition work. Weaver was hired as structural engineer. Basser Builders served as construction consultant.

St. Paul issued a $5,280,000 Contractor's and Owner's Property Protection policy on the project for the period from August 29, 1983 through August 29, 1984. Coverage was subsequently extended until November 1, 1984.

Renovation of the project was completed and occupancy began in October 1984. The total cost of renovation exceeded $4,500,000, and Bank One of Columbus, N.A. ("Bank One") provided the Owner with financing, secured by a mortgage, in the principal amount of $4,838,800. HUD guaranteed repayment of the loan.

The Owner obtained a comprehensive all risk insurance policy from INA for the period from November 1, 1984 through November 1, 1985. The policy was renewed as of November 1, 1985 for another year. Both Bank One and HUD were named in the loss payee clause.

Some time after occupancy of the buildings began, reports began to surface of soft or sinking floors. Tests revealed extensive rotting in the wood in the buildings, and it was eventually determined that the structural integrity of the buildings had been compromised because of a fungal growth in the wood. On November 19, 1985, INA was notified by the Owner of a potential loss under the policy, following which INA conducted its own investigation into the matter.

On November 26, 1985, following a determination that the buildings were in danger of collapsing, the project was evacuated. The project has remained vacant ever since.

The Owner defaulted on its mortgage, and HUD was required to honor its guarantee by making payment on behalf of the Owner to Bank One. In July 1986, Bank One assigned its rights to HUD.

On October 2, 1986, INA rejected the Owner's claim. One day later, INA filed the instant lawsuit, seeking a declaratory judgment that it is not liable under its policy.

## Discussion

### 1. INA's Motion

INA argues that it is entitled to summary judgment because the alleged loss falls within one or more of the following specific exclusions contained in the policy: damage resulting from wet or dry rot, latent defect or inherent vice, wear and tear (including deterioration, settling and changes in temperature or humidity), and faulty design, workmanship and material. INA also contends that the losses in question are barred by the principle of "lack of fortuity" and by the Owner's purported failure to submit a timely written notice of loss and to commence suit in a timely manner.

■ The leading case in the Second Circuit on the interpretation of "all risk" policies is *Pan American World Airways, Inc. v. Aetna Casualty & Surety Co.*, 505 F.2d 989 (2d Cir.1974). There, the Court held that an insured under an all risks policy establishes a prima facie case for recovery merely by showing the existence of the policy and a loss with respect to covered property. 505 F.2d at 999. Once a prima facie case is made, to avoid liability under the policy the insurer must prove that the cause of the loss falls within one of the terms of exclusion. *Id.*

To show that a loss falls within an exclusion, the insurer "must demonstrate that an interpretation favoring [the insurer] is the only reasonable reading of at least one of the relevant terms of exclusion." *Pan American*, 505 F.2d at 1000 (citations omitted). *Accord Westchester Resco Co. v. New England Reinsurance Corp*, 818 F.2d 2, 3 (2d Cir.1987) (per curiam) (under New York law, "general rule" is that "ambiguities in an insurance policy are to be construed strictly against the insurer"). A court may infer from an insurer's reliance on a large number of exclusions that the insurer "recognize[s] that each of the exclusions is ambiguous or has only uncertain application to the facts."

*Pan American,* 505 F.2d at 1005 (citations omitted).

 Here, it is undisputed that an all risk policy was issued and that a loss with respect to property covered by the policy was suffered. Hence, a prima facia case of coverage has been established. For INA to prevail on its motion, it must show that a reasonable trier of fact could only find that the cause of the loss in question falls within one of the policy exclusions.

INA's motion must be denied, for genuine issues of material fact and ambiguities in the policy exist at least with respect to following: (1) whether the exclusion for "wet or dry rot" bars recovery for catastrophic loss from rot or whether it only bars recovery for incidental damages from rot in the nature of ordinary wear and tear;[2] (2) whether the losses in question constitute damages resulting from wear and tear, settling, or changes in temperature and humidity;[3] (3) whether all pre-existing rotted wood was removed from the buildings during demolitions;[4] (4) whether the damages from wood rot occurred pre- or post-renovation;[5] (5) whether the damages resulted from latent defects or inherent vice;[6] (6) whether the loss resulted from faulty design, workmanship or material;[7] and (7) whether the loss is covered by the provision in the policy that states that INA will cover "loss or damage that results from [faulty design, workmanship, material, manufacture or installation]."[8]

Likewise, INA's reliance on the principle of "lack of fortuity"—the principle that coverage is precluded when there is a certainty of loss—also must be rejected because of the existence of issues of fact. A fact finder could reasonably find that the parties to the insurance contract, including those who committed millions of dollars to the project, did not know or expect that the buildings would become uninhabitable because of wood rot. *See Adams–Arapahoe Joint School Dist. v. Continental Ins. Co.,* 891 F.2d 772, 775 (10th Cir.1989) ("a loss caused by a pre-existing defect is fortuitous so long as neither party knew of the defect or expected the loss").

Finally, INA's timeliness arguments also must be rejected. First, an issue exists as to whether the notice of loss provision would preclude HUD from recovering on the policy as a mortgagee, since it is not clear from the record whether INA ever notified HUD that the Owner had failed to submit a proof of loss. *See* Policy at p. 31 ("If you [the Owner] fail to give us proof of loss, the designated mortgagee or trustee will be responsible for giving us the proof of loss within 60 days *after being notified by us.*") (emphasis added). Second, issues of fact exist as to the date of the loss and when the duty to file suit was triggered.[9] While INA relies on HUD's inspection report issued in July 1985, a reasonable fact finder certainly could conclude that the report, construed in the light most favorable to the parties opposing the motion for summary judgment, did not trigger the 12–month provision. *See In re St. Clare's Hospital & Health Center,* 934 F.2d 15, 19 (2d Cir.1991).

Accordingly, INA's motion is denied.

## 2. *HUD's Motion*

Since no papers in opposition to HUD's motion have been filed, its motion is granted and the claims asserted against it by Beltrone, Continental, BAT, Ritz and Weaver are dismissed with prejudice.

---

2. The "wet or dry rot" language appears in paragraph 17 of the exclusions section of the policy, which is entitled "Wear and Tear."

3. *See, e.g.,* Murdoch Dep. at 77. *See Barash v. Insurance Co. of North America,* 114 Misc.2d 325, 451 N.Y.S.2d 603 (S.Ct. N.Y. Co. 1982).

4. *See, e.g.,* Meyer Dep. at 36, 57; McEwan Dep. at 24–25; Vautrin Dep. at 57.

5. *See, e.g.,* Murdoch Dep. at 59–60, 82; Worrall Decl. ¶ 11.

6. *See, e.g.,* Baldwin Dep. at 58–59; Report of Joe W. Clark at 5.

7. *See* INA Mem. at 19 ("it appears that there will be a question of fact on the issue of whether faulty design, and/or workmanship were involved in the loss at the Victor–Carrybag buildings").

8. *See* Paragraph 21 of the exclusions section of the policy.

9. *See, e.g.,* Curry Aff. ¶ 3; Basser Aff. ¶¶ 7, 8.

### 3. *St. Paul's Motion*

St. Paul seeks dismissals of the claims brought against it by the Owner and HUD under an insurance policy issued by it on the basis (i) that the Owner and HUD failed to provide timely notice of the alleged loss and (ii) that the purported loss falls within the policy's exclusions for "inherent nature" or "latent defect" and faulty workmanship. St. Paul also seeks dismissal of the cross-claims against it for contribution and indemnification on the basis that as a matter of law it cannot be held liable for contribution or indemnification when its only role in the project was to provide certain insurance.

St. Paul's policy (no. 190JB6403) provides in pertinent part as follows:

> If an accident or incident causes a property loss that's covered under this policy you [the Owner] must:
> 1. Tell us or our agent what happened *as soon as possible* ....

(Emphasis added). Hence, the Owner's obligation was to provide notice of loss "as soon as possible." Clearly, genuine issues of fact exist as to when the Owner's obligation to provide notice arose, *i.e.*, when it became "possible" for the Owner to tell St. Paul "what happened."

As noted above, a genuine dispute exists as to the cause of the wood rot that led to the losses sustained. Likewise, material issues of fact exist as to when the loss occurred, whether the loss occurred during the policy period,[10] when it was or should have been discovered, when it should have been reported to St. Paul, and whether timely notice was given. The question of when it became "possible" for the Owner to apprise St. Paul of the loss is inherently a factual question that can only be resolved at trial. (*See* Basser Aff. ¶¶ 4–8; Curry Aff. ¶¶ 3–4).

In addition, as HUD points out, the "Mortgage Holder Endorsement" to St. Paul's policy provides that the mortgage holder's "right to receive payment won't be affected by ...

[the named insureds' or the Owner's] actions or inactions." Although the Endorsement does provide that the "mortgage holder *can* make a claim by submitting a 'Proof of Loss Statement' " if the Owner fails to do so (emphasis added), the use of the word "can" is ambiguous. On this motion for summary judgment, the ambiguity must be read in favor of the parties opposing summary judgment.

Similarly, for the reasons set forth in the discussion of INA's motion above, genuine issues of fact also exist with respect to the claimed exclusions for "inherent nature" or "latent defect" and faulty workmanship.

Accordingly, St. Paul's motion for summary judgment must be denied to the extent it seeks dismissal of the claims of the Owner and HUD.

With respect to the prong of St. Paul's motion seeking dismissal of the cross-claims against it for contribution and indemnification, the Court has been advised that the cross-claims of Beltrone, Continental and Ritz have been voluntarily withdrawn; hence, St. Paul's motion as to them is moot. The docket sheet does not show that BAT has filed any papers in opposition to the motion, and the Court has been advised by counsel for St. Paul that no opposition papers were received from BAT. Accordingly, the motion is granted with respect to BAT, and its cross-claims against St. Paul are dismissed with prejudice.

### 4. *The Beltrone/Continental Motion*

■ The motion filed by Beltrone and Continental has five prongs to it. First, Beltrone seeks dismissal of the tort claims asserted against it by the Owner and HUD on the theory that its liability, if any, is solely contractual, for any claims for damages would necessarily arise from its performance of its contract to serve as general contractor. Second, Beltrone argues that because its potential liability is solely for breach of con-

---

**10.** St. Paul argues in its reply memorandum that summary judgment should also be granted because the alleged loss did not occur during the policy period. St. Paul did not, however, make this argument in its opening brief, as it moved for summary judgment against the Owner and HUD solely on the bases that timely notice of loss was not given (Point One) and that the loss fell within one or more exclusions (Point Two). In any event, a material question of fact exists as to when the loss occurred.

tract, the third-party claims seeking contribution from it should be dismissed on the theory that contribution may only be obtained from tortfeasors. Third, Beltrone seeks dismissal of the claims asserted against it by INA, BAT, Ritz and Weaver for common law indemnification on the ground that they are only entitled to pursue claims for contribution. Fourth, Continental argues that since its potential liability is purely contractual (*i.e.*, as surety on the bond), all claims against it for contribution and common law indemnification should be dismissed. Fifth, Beltrone seeks dismissal of the "contractual indemnification" claims filed against it by BAT.

### A. The Contract–Tort Distinction

As to the first prong of its motion, Beltrone relies heavily on *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 516 N.E.2d 190, 521 N.Y.S.2d 653 (1987), and argues that because the claims against it sound solely in contract, the tort claims must be dismissed.

In *Clark–Fitzpatrick*, the Court of Appeals affirmed the dismissal of negligence claims where "the relationship between the parties was defined by a written contract," holding:

> [A] simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated. This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract.

70 N.Y.2d at 389, 521 N.Y.S.2d at 656–57, 516 N.E.2d at 193. (citations omitted).

The viability of a tort claim in cases where the relationship between parties arises from a contract—cases falling in the "borderland between tort and contract"—was again addressed by the Court of Appeals in *Sommer v. Federal Signal Corp.*, 79 N.Y.2d 540, 550–51, 593 N.E.2d 1365, 1368, 583 N.Y.S.2d 957, 960–61 (1992).

The Court in *Sommer* identified the factors to be considered in determining whether tort liability exists, apart from and in addition to the contract liability. These factors include: (1) the relationship between the parties (*e.g.*, professionals and common carriers may be liable for failure to exercise reasonable care, irrespective of their contractual duties); (2) the nature of the injury; (3) the manner in which the injury occurred; and (4) the resulting harm. 79 N.Y.2d at 551–52, 583 N.Y.S.2d at 961, 593 N.E.2d at 1369.

If a plaintiff has not suffered personal injury or property damage but is seeking merely the replacement cost of a product or enforcement of the bargain, it should proceed only on a contract theory. But if the plaintiff has suffered personal injury or property damage, particularly if the loss results from an "abrupt, cataclysmic occurrence," then a tort claim may be viable. 79 N.Y.2d at 552, 583 N.Y.S.2d at 961, 593 N.E.2d at 1369.

In *Sommer*, the Court of Appeals held that negligence claims could be asserted against a fire alarm company that had contracted with plaintiffs to provide fire alarm monitoring services. Because of the company's alleged negligence, fire alarms were ignored when a fire broke out, resulting in millions of dollars of damages as the fire spread out of control. The Court held that the company had a duty to act with reasonable care that flowed, not just from the contract, but also from New York City's comprehensive fire-safety regulations. The Court noted also that fire alarm companies perform "a service affected with a significant public interest; failure to perform the service carefully and competently can have catastrophic consequences." 79 N.Y.2d at 552–53, 583 N.Y.S.2d at 962, 593 N.E.2d at 1370. Finally, the Court held that the loss in question—damages from an out-of-control fire—was the type of "abrupt, cataclysmic occurrence" that could give rise to a tort claim. 79 N.Y.2d at 552–53, 583 N.Y.S.2d at 962, 593 N.E.2d at 1370. *See also Trustees of Columbia Univ. v. Gwathmey Siegel & Assocs. Architects*, 192 A.D.2d 151, 601 N.Y.S.2d 116, 118 (1st Dep't 1993) (plaintiff could assert negligence claim against general contractor, independent from contract claim, because the work involved "the construction of a facade for a tall building in a heavily trafficked public area ... so affected with the public interest that the failure to perform

competently can have catastrophic consequences").

In the present case, the nature of the work in question also was "affected with the public interest." The project in question involved more than 100 federally-subsidized housing units for the elderly and disabled. The purported failure to exercise due care threatened the entire structural integrity of the buildings in question, and there were potentially, if not actually, catastrophic losses as the buildings were evacuated to avoid bodily harm to the residents. Moreover, there may be far more at stake—in terms of damages—than replacement costs. At minimum, there exist genuine issues of facts with respect to these matters that preclude the grant of summary judgment.

Accordingly, this prong of the summary judgment motion is denied.

### B. *The Claims for Contribution*

Since the second prong of Beltrone's motion is premised on its now-rejected argument that its liability is solely contractual in nature, this prong of the motion is also denied.

### C. *The Indemnification Claims*

■ In the third prong of its motion, Beltrone argues that the common law indemnification claims asserted against it must be dismissed on the basis that common law (or implied) indemnification is only available in situations where the party seeking indemnification committed no wrong itself, but is held responsible solely on a vicarious or derivative basis. Beltrone contends that because the liability of INA, BAT, Ritz and Weaver here is not purely vicarious or derivative, their claims for common law indemnity must be dismissed.

■ The distinctions between contribution and indemnity have been discussed in numerous decisions. *See, e.g., Glaser v. M. Fortunoff of Westbury Corp.,* 71 N.Y.2d 643, 524 N.E.2d 413, 529 N.Y.S.2d 59 (1988); *Guzman v. Haven Plaza Housing Dev. Fund Co.,* 69 N.Y.2d 559, 509 N.E.2d 51, 516 N.Y.S.2d 451 (1987); *Rosado v. Proctor & Schwartz, Inc.,* 66 N.Y.2d 21, 484 N.E.2d 1354, 494 N.Y.S.2d 851 (1985). Contribution does not require any kind of agreement between or among wrongdoers, and the loss is distributed among the tortfeasors as they are required to pay their proportionate share of the loss. Common law indemnity, on the other hand, arises out of an implied-in-law contract, and the entire loss is shifted from one party to another to prevent an unjust or unsatisfactory result. *See Rosado,* 66 N.Y.2d at 23–24, 494 N.Y.S.2d at 853, 484 N.E.2d at 1356.

■ In the "classic" implied indemnification case, the party seeking indemnity commits no wrong itself, but is held responsible because of some relationship with the tortfeasor or some other obligation. If the party seeking indemnity is held liable in part because of its own negligence, implied indemnification is unavailable and the only remedy is contribution. *Glaser,* 71 N.Y.2d at 646, 529 N.Y.S.2d at 61, 524 N.E.2d at 415; *Guzman,* 69 N.Y.2d at 567–68, 516 N.Y.S.2d at 454, 509 N.E.2d at 54.

In the present case, Beltrone is correct that BAT, Ritz and Weaver may not seek implied indemnification, for each of these parties is alleged to have been negligent. If they are held liable, it will be because they are found to be responsible at least in part for the losses in question. Significantly, BAT, Ritz and Weaver have not submitted any papers in opposition to Beltrone's motion. Hence, to the extent BAT, Ritz and Weaver seek implied indemnity, their claims must be dismissed; their contribution claims, of course, remain in the case.

■ A different situation, however, exists as to INA, for INA has not been accused of any negligence. Indeed, its only involvement in the project was as an insurer. Its liability (if any) arises solely—and vicariously or derivatively—by virtue of its contractual obligations to the Owner and to HUD. Hence, if it must pay on the losses because of the negligence of Beltrone, then indemnification principles apply.

Accordingly, this prong of Beltrone's motion is granted as to BAT, Ritz and Weaver and denied as to INA.

### D. *The Claims Against Continental*

As to the fourth prong of their motion, Beltrone and Continental correctly point out that Continental's liability, if any, is solely contractual, based on its contractual obligations under the performance bond. Continental's only involvement in the project was as surety under the bond and its only liability will be on the bond. Hence, the claims against Continental for contribution and implied indemnification must be dismissed. The claims on the bond, of course, survive.

### E. *BAT's Contractual Indemnification Claim*

Beltrone also seeks dismissal of BAT's claim for "contractual indemnification" on the grounds that BAT is not a third-party beneficiary of Beltrone's contract with the Owner. Since no opposition papers have been filed by BAT, this prong of Beltrone's motion is granted and BAT's contractual indemnification claim is dismissed.

### 5. *Ritz's Motion*

Ritz, the subcontractor for the demolition and cleaning work, moves for summary judgment on "exactly the same [grounds] as the grounds for which summary judgment is sought on behalf of Beltrone." (Hirschen Aff., p. "2"). Accordingly, Ritz's motion is governed by the Court's rulings above with respect to the Beltrone/Continental motion.

### Conclusion

To summarize:

1. INA's motion for summary judgment is denied;

2. HUD's motion for summary judgment is granted;

3. St. Paul's motion for summary judgment is denied to the extent it seeks dismissal of the claims of the Owner and HUD and granted as to BAT's cross-claims against it for contribution and indemnification, the other cross-claims for contribution and indemnification having been withdrawn;

4. Beltrone's and Continental's motion is (a) denied as to the tort claims asserted by the Owner and HUD, (b) denied as to the third-party claims seeking contribution from it, (c) denied as to the claims asserted against it by INA for common law indemnification and granted as to the claims of BAT, Ritz and Weaver for common law indemnification, (d) granted as to the contribution and implied indemnification claims against Continental, and (e) granted as to the "contractual indemnification" claims asserted by BAT.

5. Ritz's motion is governed by the Court's rulings on the Beltrone/Continental motion.

SO ORDERED.