OPINION OF THE COURT
Lucy Billings, J.
I. Introduction
The trial of this action and defendant’s pending motion have *313 required the court to determine whether appellate decisions, that a trap door is not in itself a structural defect, and the absence of any statutory or regulatory provision governing trap doors, insulate a building owner from liability for injury to a tenant’s employee who fell through the building’s trap door. This controlling authority, to the extent discernible, concerns trap doors constructed by a tenant, without the owner’s knowledge. Here, the evidence showed that the owner designed and constructed the floor with the trap door and the surrounding area for the tenant restaurant as part of the lease terms and positioned the door in an area where, if open, it would be unsafe for persons whose presence was foreseeable. Thus the question for the jury was not whether the trap door in itself was unsafe, since the controlling authority holds to the contrary, but whether the trap door, because of its location, was unsafe.
I presided at the trial before a jury May 2-3 and 8-14, 2007. On May 14, 2007, the jury rendered a verdict finding that the trap door was unreasonably dangerous and awarding plaintiff damages. Neither party challenges the amounts of damages. Instead, defendant moves to set aside the verdict on defendant’s liability on the ground that the verdict is unsupported by legally sufficient evidence. For the reasons summarized above and fully explained below, the court denies defendant’s motion. (CPLR 4404 [a].)
II. Summary of the Evidence
Plaintiff testified that he was injured February 18, 2001, when he fell into an open basement hatch to the basement floor below, while working in premises owned by defendant Barnard College and occupied by his employer Tealuxe Inc. The premises are part of the ground floor and basement at 2955 Broadway on the corner of West 116th Street, near the college, in New York County. As plaintiff attended to a customer, he turned, unwittingly stepped into the open basement hatch, fell and suffered injuries.
Jack Bernice, defendant’s building superintendent, testified that there was no basement hatch in the floor of the premises during the occupancy of tenants before Tealuxe. Michael Feierman, defendant’s general counsel, testified that defendant and Tealuxe entered a lease for the premises September 30, 1999. (Exhibit 4.) The lease prohibited Tealuxe from making alterations or structural changes to the premises without defendant’s consent. {Id. H 3.) Under the lease, defendant agreed to make *314 modifications to the leased premises, including installing “a new concrete floor in the store portion” of the premises before Tealuxe took possession. (Id. If 53 [b] [ii].) Defendant and Tealuxe consulted as to the type of floor. A floor plan attached to the lease showed a basement hatch behind a counter. The parties to the lease specifically struck and initialed a provision in the lease obligating Tealuxe to reimburse defendant for installing the basement hatch. (Id. 1Í 98.)
The lease further reflected how Tealuxe would use the premises for its “retail sale of tea, coffee and other non-alcoholic beverages, teaware and coffeeware, sandwiches, light foods for breakfast, lunch and dinner, waiter and waitress service, counter and table service, and accessories.” (Id. If 1.) When defendant’s building superintendent Bernice visited the premises repeatedly during Tealuxe’s occupancy, he observed Tealuxe’s operations and used the trap door himself.
Feierman further testified that structural changes required approval by the New York City Department of Buildings. In a form defendant filed with the New York City Department of Environmental Protection and dated March 18, 2000, the scope of work included installation of a basement hatch. (Exhibit 16.) Yadira Hernandez, Department of Buildings supervisor of data entry regarding “resource obligation applications,” which include applications for construction or renovation (transcript of proceedings at 4 [May 9, 2007]), testified that defendant submitted plans to work on the first floor and basement of the building where plaintiff fell. Those plans included installation of the basement hatch behind the counter. Barry Kaufman, defendant’s vice-president, filed the application, which was approved April 5, 2000.
III. Legal Sufficiency Standard
Defendant claims that plaintiff failed to prove defendant’s liability. The court may not set aside the verdict based on legal insufficiency of the evidence unless no valid line of reasoning and permissible inferences would lead rational jurors to the conclusion they reached. (Stephenson v Hotel Empls. & Rest. Empls. Union Local 100 of AFL-CIO, 6 NY3d 265, 271-272 [2006]; Cohen v Hallmark Cards, 45 NY2d 493, 499 [1978]; Sow v Arias, 21 AD3d 317 [1st Dept 2005].) Legal sufficiency of the evidence is a question of law for the court. (See Cohen v Hallmark Cards, 45 NY2d at 498; Sow v Arias, 21 AD3d 317 [2005].) Setting aside a verdict based on legal insufficiency of evidence results in a judgment of dismissal. (Cohen v Hallmark *315 Cards, 45 NY2d at 498; Smith v Au, 8 AD3d 1, 2 [1st Dept 2004] .)
IV Defendant’s Liability
When an owner of leased premises is out of possession of the premises, the owner may be liable for a condition on the premises that caused injury based on constructive notice of the condition, if (1) the owner retained a right to reenter the premises for inspection and repair, and (2) the condition was a structural defect that violated a statutory requirement. (Guzman v Haven Plaza Hous. Dev. Fund Co., 69 NY2d 559, 566-567 [1987]; Torres v West St. Realty Co., 21 AD3d 718, 721 [1st Dept 2005] ; Davis v HSS Props. Corp., 1 AD3d 153, 154 [1st Dept 2003]; McDonald v Riverbay Corp., 308 AD2d 345, 346 [1st Dept 2003]; see Uhlich v Canada Dry Bottling Co. of N.Y., 305 AD2d 107, 108 [1st Dept 2003]; Lopez v 1372 Shakespeare Ave. Hous. Dev. Fund Corp., 299 AD2d 230, 231 [1st Dept 2002].) An owner out of possession is also liable, however, for injuries caused by any dangerous condition the owner created. (Bleiberg v City of New York, 43 AD3d 969, 971 [2d Dept 2007]; Negron v Rodriguez & Rodriquez Stor. & Warehouse, Inc., 23 AD3d 159, 160 [1st Dept 2005]; Torres v West St. Realty Co., 21 AD3d at 721; Stickles v Fuller, 9 AD3d 599, 600-601 [3d Dept 2004].) This liability for creating a hazardous condition is separate from liability based on the owner’s contractual or statutory duty to repair or maintain the premises (Bleiberg v City of New York, 43 AD3d at 971; Negron v Rodriguez & Rodriquez Stor. & Warehouse, Inc., 23 AD3d at 160; Stickles v Fuller, 9 AD3d at 600), and from liability based on a structural defect that violates a statutory safety provision (Torres v West St. Realty Co., 21 AD3d at 721).
Here, plaintiff presented evidence that the basement hatch was not in the floor of the premises until after defendant entered its lease with Tealuxe. Before Tealuxe took possession of the premises, defendant installed a new concrete floor pursuant to the lease, and the plans defendant submitted to city agencies for prior approval of the work and attached to the lease showed installation of a basement hatch. This evidence furnished a sufficient basis for the jury to conclude that defendant constructed the basement hatch. (Bleiberg v City of New York, 43 AD3d at 971.)
While construction of a trap door in itself is not a structural condition that violates any statutory requirement, thus imposing liability on an owner out of possession (Dexter v Horowitz *316 Mgt., 267 AD2d 21, 22 [1st Dept 1999]; Conti v Kimmel, 255 AD2d 201 [1st Dept 1998]; Brown v Weinreb, 183 AD2d 562, 563 [1st Dept 1992]; Daniel v Fleisher, 230 AD2d 763, 764 [2d Dept 1996]), negligent configuration of the area surrounding an otherwise innocuous condition may render it dangerous (McNally v East Twins Enters., Inc., 19 AD3d 152, 153 [1st Dept 2005]; Mauriello v Port Auth. of NY. & N.J., 8 AD3d 200, 201 [1st Dept 2004]; Quinn v K-Mart Corp., 224 AD2d 988 [4th Dept 1996]). Here, plaintiff did not claim that the basement hatch or its door was dangerous in itself. Instead, plaintiff presented largely uncontroverted evidence that the basement hatch was dangerous because of its location and normal use, for which the door regularly was opened, and of which defendant was aware, from its construction of the hatch, lease of the premises, visits to the premises, and own use of the trap door. (See Almanzar v Picasso’s Clothing, 281 AD2d 341, 342 [1st Dept 2001]; Fant v Mayer, 250 AD2d 355 [1st Dept 1998].)
Although plaintiff, too, was aware of the basement hatch’s location and had used the hatch before he fell into it, he explained that when he and his coworkers used it to obtain items stored in the basement, if the hatch door was open, there were only 12 inches on each side of the opening, which did not allow room to walk past the opening to the other side of the hatch door. Just before plaintiff fell, three or four other employees were working behind the counter near the hatch. While the hatch door made a loud noise when opened or closed, plaintiff did not hear that noise when the shop was noisy, including the period preceding his fall.
The evidence thus demonstrates that the basement hatch’s location behind the counter, in a busy serving area, where employees moved back and forth quickly and their attention would be drawn to customers rather than the floor, and the presence of employees who would need to open the hatch door frequently to perform their work, created a dangerous condition. Based on defendant’s construction of the hatch door for the restaurant’s use and defendant’s familiarity with both the intended and the actual use, defendant was aware of these conditions. The court instructed the jury to determine whether it was foreseeable to defendant that these conditions would pose a hazard to persons present in the area. Consequently, despite the lack of evidence of a structural defect in the hatch or its door in violation of a statutory requirement, undisputed evidence regarding the configuration and use of the area surrounding the hatch and *317 door, reflected in defendant’s lease, provided a basis for the jury to conclude that defendant created a dangerous condition, for which defendant is liable. (McNally v East Twins Enters., Inc., 19 AD3d at 153; Mauriello v Port Auth. of N.Y. & N.J., 8 AD3d at 201; Quinn v K-Mart Corp., 224 AD2d 988 [1996]; see Dexter v Horowitz Mgt., 267 AD2d at 22; Brown v Weinreb, 183 AD2d 562 [1992]; Ferro v Burton, 45 AD3d 1454, 1455 [4th Dept 2007].)
Defendant’s reliance on Fant v Mayer (250 AD2d 355 [1998]), to support an out-of-possession owner’s nonliability for nonstructural defects, relates to the constructive notice basis for liability, which plaintiff does not claim here, and addresses the plaintiffs failure there to show violations under the New York Labor Law. Anilus v Realties (206 AD2d 446, 447 [2d Dept 1994]), on which defendant also relies, also does not support an out-of-possession owner’s nonliability for creating a dangerous condition when not a structural defect and statutory violation. That decision nowhere indicates the out-of-possession owner constructed, renovated, or repaired the garage doors that injured the plaintiff there. (Id.) In contrast, the evidence here showed that defendant constructed the floor with the basement hatch in a dangerous location.
V. Conclusion
In sum, the jury’s verdict on defendant’s liability was based on sufficient evidence that defendant created a dangerous condition and a fair interpretation of that evidence. Therefore the court denies defendant’s motion to set aside the verdict. (CPLR 4404 [a].)