VIOLA MANNING, Respondent, v NEW YORK TELEPHONE COMPANY, Defendant, and W.R.C. PROPERTIES, INC., et al., Appellants.

W.R.C. PROPERTIES, INC., Third-Party Plaintiff-Appellant, v INTERNATIONAL PAPER COMPANY, Third-Party Defendant-Appellant.

First Department, May 17, 1990

APPEARANCES OF COUNSEL

*Martin Diennor* of counsel *(Abraham Fuchsberg* with him on the brief; *Fuchsberg & Fuchsberg,* attorneys), for respondent.

*Robert F. Roarke* of counsel *(Gerard M. McCarthy* with him on the brief; *Wilson, Elser, Moskowitz, Edelman & Dicker,* attorneys), for W.R.C. Properties, appellant and third-party plaintiff-appellant.

*Joseph D. Ahearn* of counsel *(Angelo A. Giordano,* attorney), for Allied Maintenance Corp., appellant.

*Matthew Jay Weiss* of counsel *(Evan H. Krinick* with him on the brief; *Rivkin, Radler, Dunne & Bayh,* attorneys), for third-party defendant-appellant.

## OPINION OF THE COURT

ASCH, J.

Third-party defendant International Paper Company (IPC)

entered into a lease agreement with the landlord, defendant W.R.C. Properties, Inc. (WRC), for certain floors at the premises, including the 44th floor. Thereafter, IPC retained the services of a cleaning service, defendant Allied Maintenance Corp. (Allied).

Subsequently, plaintiff Viola Manning, an employee of IPC, slipped on a highly polished wooden floor located on the 44th floor of the premises, and commenced this personal injury action against WRC, Allied (and New York Telephone Company, against whom the action has been dismissed). WRC, the landlord, brought a third-party action against IPC for indemnification. The IAS court denied the motion by third-party defendant IPC and the cross motions by the defendants for summary judgment.

■ The record does reveal a triable issue of fact as to whether Allied's dry buffing of the high glossy surface of the wooden floor where plaintiff slipped created a dangerous condition. Plaintiff, in opposition to the motion, submitted an affidavit of an engineer and expert in floor maintenance, who examined the relevant depositions and concluded that the method employed by Allied in maintaining the floor was not proper and that residue ground into the floor had caused it to be hazardous. While defendant disputes this finding, triable issues of fact are raised which preclude the grant of summary judgment.

The general rule is that a landlord is not liable for injuries sustained by third parties on the demised premises after possession has been transferred to the tenant, unless the landlord has covenanted to maintain or repair the premises (*Putnam v Stout,* 38 NY2d 607; *Schlesinger v Rockefeller Center,* 119 AD2d 462, 463; Restatement [Second] of Torts §§ 355, 356, 357).

■ It seems clear that WRC, the landlord, had no "obligation" under the lease provisions to make repairs to the premises. Article 14 of the lease entitled "Repairs and Maintenance" provides, *inter alia:* "14.01. Tenant shall take good care of the Demised Premises. Tenant, at its expense, shall promptly make all repairs, ordinary or extraordinary, interior or exterior, structural or otherwise, in and about the Demised Premises and the Building, as shall be required by reason of (i) the performance or existence of Tenant's Work or Tenant's Changes, (ii) the installation, use or operation of Tenant's Property in the Demised Premises, (iii) the moving of Tenant's

property in or out of the Building, or (iv) the misuse or neglect of Tenant or any of its employees, agents or contractors. Except if required by the neglect or other fault of Landlord or its employees, agents or contractors, Tenant, at its expense, shall replace all scratched, damaged or broken door or other glass in or about the Demised Premises * * * and shall be responsible for all maintenance and repair of lighting fixtures and wall and floor coverings in the Demised Premises."

Plaintiff argues, nevertheless, that defendant WRC retained sufficient control over the premises, including a reservation of the right to reenter and repair, so as to make it liable for the plaintiff's injuries.

The general rule has been that, absent statutory duties, a landlord's reservation of the right to enter the leased premises to make repairs or correct improper conditions does not impose liability for a subsequently arising dangerous condition *(Schlesinger v Rockefeller Center,* 119 AD2d 462, *supra; Silver v Brodsky,* 112 AD2d 213; *Mobile Home Estates v Preferred Mut. Ins. Co.,* 105 AD2d 883, 884). In *Guzman v Haven Plaza Hous. Dev. Fund Co.* (69 NY2d 559), the Court of Appeals found, however, that the owner (Village East) of a building leased to a supermarket covered by the Administrative Code of the City of New York, which had no obligation to repair or maintain the premises, but retained the right to reenter and inspect and to make needed repairs at the tenant's expense, could be held responsible for injuries to a woman who fell on a defective staircase. "Village East's liability to plaintiff, we conclude, is controlled by our decisions in *Tkach v Montefiore Hosp.* (289 NY 387) and *Worth Distribs. v Latham* (59 NY2d 231) dealing with the liability of an owner out of possession under Multiple Dwelling Law § 78" *(Guzman v Haven Plaza Hous. Dev. Fund Co., supra,* at 565). The court noted that in its cases dealing with Multiple Dwelling Law § 78, it had decided that while owners who completely divest themselves of control will not be liable, owners who reserve the right under the lease to enter for inspection and repairs will be subjected to liability.

"We see no basis for distinguishing these cases. Like the owners of the buildings in *Tkach* and *Worth Distribs.* which were specifically bound by statute to keep the premises 'in good repair' (Multiple Dwelling Law § 78), Village East, as owner, had obligations under the Administrative Code which, it has been held, has the force and effect of statute *(see,* n 3, *supra).* Village East had both a general responsibility for safe

maintenance of the building and its facilities (Administrative Code §§ C26-105.1, C26-105.2 [now §§ 27-127, 27-128]) and specific obligations pertaining to minimum handrail clearance (Administrative Code § C26-604.8 [now § 27-375]) and minimum illumination (Administrative Code § C26-605.1 [a] [now § 27-281 (a)]). Also, as in *Tkach* and *Worth Distribs.*, Village East, as owner-lessor, could enter the premises 'at all times' to inspect. In addition, it had the right to make repairs 'if the tenant fail[ed] to make' them and to change the 'arrangement and/or location' of the stairs.

"Although there is no evidence that Village East had actual notice of the claimed dangerous condition, its right to reenter the premises is sufficient to charge it with constructive notice *(Tkach v Montefiore Hosp., supra,* at 390). Its failure to act to remedy the defect as it could have done under the lease is the basis for its liability under[7] the various provisions of the New York City Administrative Code." *(Supra,* at 566-567.)

The landlord's retained right in a lease to reenter the leased premises at all times and make repairs would form a sufficient basis to charge it with constructive notice of dangerous conditions in those parts of the building into which the landlord had the authority to enter, inspect and make repairs. However, study of the lease in the case before us shows that the tenant IPC took possession of the demised premises on an "as is" basis and, therefore, was responsible for all decoration, alterations, etc. (para 4.01). It selected its own general contractor to perform such work, subject only to the approval of the landlord, which approval "shall not be unreasonably withheld" (para 4.03). In the article entitled "Repairs and Maintenance" (para 14.01 set forth above), it was provided that the tenant IPC would be "responsible for all maintenance and repair of lighting fixtures and wall and floor coverings". Likewise, IPC was given the right to enter into a direct contract with the cleaning contractor, again with the approval of the landlord.

Did the lease, however, provide that the landlord had the right to reenter to inspect and make repairs? At first blush, the answer to that must be a "qualified" yes. Pursuant to paragraph 18.01 of the lease, there is a provision that if the landlord (or the board of managers in this condominium building) seeks access to the premises for repairs, other than on an emergency basis, to common elements, the landlord, "shall give Tenant notice of its intention to enter any such area, and shall furnish Tenant with a copy of the plans and

specifications for any work to be performed therein, and Tenant shall have the right to consult with Landlord * * * as to the means of access and the method of completion of such repairs all in advance of the performance of such work."

It can be seen here that "access" is circumscribed by advance notice and consultation with the tenant.

Paragraph 18.03 provides in pertinent part: "18.03. Landlord, the Board of Managers and the Managing Agent shall each have the right, upon request made on reasonable advance notice to Tenant, or to an authorized employee of Tenant at the Demised Premises, to enter and/or pass through the Demised Premises or any part thereof at reasonable times during reasonable hours, (i) to examine the Demised Premises and to show them to prospective purchasers, mortgagees or lessees of Landlord's Unit or the Building, and (ii) for the purpose of making such repairs or changes permitted by Section 18.05 or performing such maintenance in or to the Building or its facilities as Landlord, the Board of Managers or the Managing Agent shall reasonably deem necessary or desirable."

Further, under paragraph 18.05 the landlord reserved the right, at any time, to make "changes in or to Landlord's Unit or the Building and the fixtures and equipment thereof, as well as in or to the street entrances, halls, passages, elevators, escalators (other than escalators located in the Demised Premises) and stairways thereof, as it or the Board of Managers may deem necessary or desirable, provided such changes do not directly affect the Demised Premises or deprive Tenant of adequate access to the Demised Premises".

■ While not an unfettered right, the landlord *did* have the right to reenter the premises for inspection and repair. Under the language of *Guzman* (69 NY2d 559, *supra)*, the reservation of a right to reenter, inspect and make repairs, even without a duty to do so, may subject a landlord to liability in commercial premises covered by the Administrative Code of the City of New York. However, in *Guzman,* the Court of Appeals found (at 566) the landlord liable for breaching both the general regulatory responsibility for safe maintenance (Administrative Code §§ C26-105.1, C26-105.2, now renum §§ 27-127, 27-128), as well as specific regulations pertaining to minimum handrail clearance (Administrative Code § C26-604.8, now renum § 27-375) and minimum illumination (Administrative Code § C26-605.1 [a], now renum § 27-381 [a]). The

instant case presents a distinguishing fact pattern. Here, plaintiff can only point to no more than a breach of the landlord's general duty to keep the premises in good repair. However, a landlord must breach other specific safety provisions of the Administrative Code (as did the landlord in *Guzman)* before liability will attach. Further, *Guzman* deals with significant structural and/or design defects involving specific Code violations which the landlord had ample opportunity to discover and cure. The defect complained of in the instant case, however, involves simple general maintenance of the premises, which was the sole responsibility of the tenant. As a consequence, the landlord cannot be held liable, nor can its third-party complaint stand.

Accordingly, the order of the Supreme Court, New York County (David H. Edwards, Jr., J.), entered January 26, 1989, which, *inter alia,* denied the motion by third-party defendant International Paper Company and cross motions by defendants W.R.C. Properties, Inc., and Allied Maintenance Corp. for summary judgment, should be modified, on the law, solely to the extent of granting the cross motion by defendant W.R.C. Properties, Inc. and the motion by third-party defendant International Paper Company dismissing the third-party complaint, and otherwise affirmed, without costs or disbursements.

MURPHY, P. J., MILONAS, ROSENBERGER and RUBIN, JJ., concur.

Order, Supreme Court, New York County, entered on or about January 26, 1989, unanimously modified, on the law, solely to the extent of granting the cross motion by defendant W.R.C. Properties, Inc. for summary judgment and the motion by third-party defendant International Paper dismissing the third-party complaint, and otherwise affirmed, without costs and without disbursements.