**Benjamin KING and Joyce King, Plaintiffs,**

v.

**Judith Evelyn HAHN, Individually, Helen K. Rosman, Indiv. and as Trustee of the Trusts F/B/O Helen K. Rosman, Barbara Joan Rosman and Judith Evelyn Rosman N/K/A Judith Evelyn Hahn, Jacob Imberman, Indiv. and as Trustee F/B/O Helen K. Rosman and Noveau Elevator Industries, Inc., Defendants.**

**Judith Evelyn HAHN, Individually, Helen K. Rosman, Indiv. and as Trustee of the Trusts F/B/O Helen K. Rosman, Barbara Joan Rosman and Judith Evelyn Rosman N/K/A Judith Evelyn Hahn, Third–Party Plaintiffs,**

v.

**GARAGE MANAGEMENT CORP. and Narragansett Parking Corp. f/k/a Sidney Garage, Inc., Third–Party Defendants.**

No. 94 Civ. 7325 PKL.

United States District Court, S.D. New York.

Feb. 13, 1998.

Worby Borowick Groner, LLP, White Plains, NY (Alicia K. Sandberg, of counsel), for Plaintiffs, Benjamin King, Joyce King.

Chesney, Murphy & Moran, Baldwin, NY (Michelle S. Russo, of counsel), for Defendants/Third–Party Plaintiffs Judith Evelyn Hahn, Individually, Helen K. Rosman, Individually and as Trustee of the Trusts F/B/O Helen K. Rosman, Barbara J. Rosman and Judith Evelyn Rosman N/K/A Judith Evelyn Hahn.

Oshman & Helfstein, LLP, New York City (Gail Goode, of counsel), for Defendant Noveau Elevator Industries. Inc.

Dougherty, Ryan, Giuffra & Zambito, New York City (Robert Giuffra, of counsel), for Third–Party Defendant Garage Management Corp.

Marshall & Bellard, Garden City, NY (Joseph Bellard, of counsel), for Third–Party Defendant Narragansett Parking Corp. f/k/a Sidney Garage. Inc.

## OPINION AND ORDER

LEISURE, District Judge.

Defendants Judith Evelyn Hahn, individually, and Helen K. Rosman, individually and as Trustee of the Trusts F/B/O Helen K. Rosman, Barbara Joan Rosman and Judith Evelyn Rosman N/K/A Judith Evelyn Hahn (the "Hahn Defendants") move this Court for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, the Hahn Defendants' motion is granted.

## BACKGROUND

The incident that led to this action occurred on October 15, 1991. At that time, the Hahn Defendants owned a parking garage located at 124 East 63rd Street in New York City (the "Garage"). Prior to that date, the Hahn Defendants leased the Garage to third-party defendant Narragansett Parking Corp. ("Narragansett"). Narragansett had an oral agreement with third-party defendant Garage Management Corp. ("GMC") under which GMC managed the Garage.

GMC employed plaintiff Benjamin King as a parking attendant at the Garage. On Octo-

ber 15, 1991, King was the only attendant on duty. A maintenance worker, Victor Cizi, also was on duty at the time. Shortly before the incident in question, plaintiff retrieved an automobile from the third floor of the Garage by transporting the car on the freight elevator to the first floor. King then opened the elevator doors on the first floor. While what happened next is in dispute, the parties agree for the purposes of this motion that King next began to walk around the back of the car with the intention of backing it out of the elevator. The upper portion of the elevator door then struck him in the head, causing great bodily injury.

The plaintiffs retained an expert, Charles Buckman, to examine the elevator. At his deposition, Buckman described the elevator as a single-speed, manually-operated traction elevator. The elevator has hoistway doors only, meaning that there are doors on each landing and there are no doors on the interior of the elevator. The doors raise vertically at the middle, creating an opening of approximately ten feet by ten feet. Each individual door therefore is approximately five feet high by ten feet wide. The upper door and lower door move in unison; as the upper door rises, the lower door descends the same distance.

The elevator shaft is not large enough for the doors on successive floors to be completely opened at the same time. For example, if the doors on the first floor were open, and someone opened the doors on the second floor, the lower door on the second floor, if completely opened, would push the upper door on the first floor a few feet back down the shaft, somewhere between fully opened and fully closed.

An individual may only operate the elevator from the inside. For example, if the elevator is on the third floor, the attendant may not call the elevator from the first floor, but must physically go to the third floor. The hoistway doors were designed to be opened only from the inside of the elevator, in part to prevent individuals from falling down the shaft. An individual, however, could pry open the hoistway doors on the Garage's elevator. Also, the elevator features an interlock system that assures all hoistway doors are closed before the elevator

is put into motion. The interlock system at the Garage had been overridden at some point prior to the accident.

The plaintiffs contend that while King was circling the automobile in order to back it out of the elevator, Cizi simultaneously pried open the elevator doors from the landing on the second floor. This caused the bottom door on the second floor to drive the upper door of the first floor back down the elevator shaft, striking King in the head.

Buckman estimates that the elevator was installed in the Garage somewhere between 1935 and 1945. He was unable to determine if the interlock system had ever been replaced.

The lease agreement in force at the time of the accident did not obligate the Hahn Defendants to make any inspections or repairs, but did give the Hahn Defendants the right to enter the premises for those purposes.

## DISCUSSION

### I. *Standard for Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, it is this Court's responsibility "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 11 (2d Cir.1986). Nonetheless, summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Id.* 477 U.S. at 325 (internal citations omitted). "The burden on the moving party may be discharged by showing ... that there is an absence of evidence to support the non-moving party's case." *Id.* (internal citations omitted). The burden of demonstrating the existence of a genuine issue of material fact then shifts to the non-moving party. *See id.* at 322–23. The non-moving party may not rely solely on its pleadings nor on conclusory factual allegations in satisfying this burden. *See Gray v. Darien*, 927 F.2d 69, 74 (2d Cir.1991). The non-moving party instead must offer specific evidence supporting its claim that there exists a genuine issue of material fact. *See Celotex*, 477 U.S. at 324. In demonstrating that the factual issue in dispute is "genuine", the non-moving party must offer evidence to allow a reasonable jury to return a verdict in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ Plaintiffs' cause of action is based upon negligence. "In order to prove a prima facie case of negligence, a plaintiff must establish: (1) the existence of a duty on the part of the defendant to the plaintiff, (2) a breach of that duty, and (3) injury suffered by the plaintiff as a result of the breach." *Iannelli v. Powers*, 498 N.Y.S.2d 377, 380 (App.Div.1986). To obtain summary judgment, a defendant must demonstrate that a plaintiff has failed to present a basis on which he could establish a *prima facie* case of negligence.

## II. *Duty*

■ In New York, a landlord is not liable for injuries sustained on the premises by third parties as a result of a dangerous or defective condition unless the landlord had actual or constructive notice of the condition for such a period of time that, in the exercise of reasonable care, it should have been corrected. *See Putnam v. Stout*, 38 N.Y.2d 607, 381 N.Y.S.2d 848, 345 N.E.2d 319, 322 (1976). In other words, absent either actual or constructive notice of the dangerous or defective condition, a landlord is not liable for injuries to third parties on the demised premises. In the instant case, the plaintiffs make no allegation that the Hahn Defendants had actual notice of any dangerous or defective conditions, nor does any evidence support actual notice by the Hahn Defendants. Thus, the issue is whether the Hahn Defendants had constructive notice of any dangerous or defective condition.

■ Constructive notice depends on the degree of control the out-of-possession landlord exercises over the premises. In *Guzman v. Haven Plaza Housing Dev. Fund Co., Inc.*, 69 N.Y.2d 559, 516 N.Y.S.2d 451, 509 N.E.2d 51 (N.Y.1987), the New York Court of Appeals addressed this issue with respect to a landlord who had reserved a right to re-enter the premises for the purpose of inspections and repairs. The court held that where the dangerous or defective condition violates an obligation imposed by statute, the landlord had constructive notice and was liable. *See Guzman* at 53–54. New York courts subsequently have refined and limited the holding of *Guzman* such that before liability is imposed on a similarly situated landlord, a plaintiff must establish the existence of a significant structural or design defect in violation of a specific statute. *See Velazquez v. Tyler Graphics. Ltd.*, 214 A.D.2d 489, 625 N.Y.S.2d 537, 538 (1995); *see also Quinones v. 27 Third City King Restaurant, Inc.*, 198 A.D.2d 23, 603 N.Y.S.2d 130, 131 (1993); *Manning v. New York Tel. Co.*, 157 A.D.2d 264, 555 N.Y.S.2d 720, 724 (1990).

### A. *Violation of a Specific Statute*

In order for the plaintiffs to maintain this cause of action against the Hahn Defendants, they must show a violation of a specific statute. In *Guzman,* the landlord breached both the general regulatory responsibility for safe maintenance (New York Administrative Code §§ 27–127 and 27–128) as well as specific regulations defining the requirements for the equipment at issue. *See Guzman,* 516 N.Y.S.2d 451, 509 N.E.2d at 52–53. In *Manning,* the landlord breached only the general duty to keep the premises in good repair. *See* 555 N.Y.S.2d at 724. The court held that the landlord could not be liable to the plain-

tiff absent the violation of a specific, as opposed to a general, statutory duty. *See id.; see also Quinones,* 603 N.Y.S.2d at 131.

■ Plaintiffs allege that the Hahn Defendants violated sections 27–127 and 27–128 of the New York City Administrative Code. These are the same provisions that the *Manning* court characterized as purely general statutes. These statutes do not impose specific requirements on an owner, but merely require the owner to maintain the premises in a safe condition. Violations of these statutes are insufficient to impute constructive notice of any alleged defects in the Garage's elevator to the Hahn Defendants.

Article 11–02 of the Building Code defines those elevator and escalator violations that constitute a condition dangerous to human life and safety. Included in this list are defective hoistway door interlocks. Plaintiffs contend that the elevator at the Garage had defective hoistway door interlocks, constituting a specific statutory violation. However, this statute does not regulate elevators, but simply makes the violation of certain other statutes more serious. Thus, Article 11–02 is not a specific statute for purposes of imputing constructive notice on the Hahn Defendants.

■ Concerning the specific regulation of the elevator, it is important to note that this elevator was installed in the Garage sometime between 1935 and 1945. The New York City Building Code enacts Reference Standard 18 (RS–18) as part of the code. *See* Administrative Code § 27–983. RS–18 adopts, with slight modifications, a national standard, ANSI/ASME A17.1, Safety Code for Elevators and Escalators, and Supplements. Plaintiffs' expert testified that these standards were enacted in approximately 1955, and there is no evidence to the contrary. Thus, there is nothing to indicate that the elevator was installed after the enactment of the current standards.

Section 27–994 of the Administrative Code indicates that the provisions of the code pertaining to elevators are not retroactive. Therefore, the elevator in the Garage, installed prior to the creation of the ANSI standards, is not subject to the provisions specific to elevators. These standards apply only to new elevators and replaced elevators. Again, no evidence indicates that anyone conducted any replacement work on the elevator in the Garage.

Plaintiffs point to RS–18 Rules 111.1 and 111.3 as specific statutory violations by the Hahn Defendants. The specific language of the Rules, however, confirms that these portions are not retroactive. The Building Code states that these Rules, which regulate the hoistway door interlocks, are applicable only to new and replacement interlocks. As there is no showing that the interlocks in the Garage elevator were ever replaced, the Hahn Defendants are not in violation of these statutes.

■ Unlike the previous statutes cited by the plaintiffs, RS–18 Rule 111.11 applies to all elevators. The ANSI standard prohibits the installation of any devices to circumvent hoistway door interlocks. Rule 111.11 clarified the standard for elevators in New York City by declaring that both new and existing interlocks must comply with the ANSI standard. Plaintiffs have made a sufficient showing that the interlock system was circumvented on the day of the accident. As this statute is a specific standard that applies to elevators, the plaintiffs have satisfied this portion of the test to determine if the Hahn Defendants received constructive notice.

## B. *Significant Structural or Design Defects*

Not all specific statutory violations are sufficient to subject an out-of-possession landlord to negligence liability; there must also exist significant structural and/or design defects in the equipment at issue. *See Velazquez,* 625 N.Y.S.2d at 538; *see also Quinones,* 603 N.Y.S.2d at 131; *Manning,* 555 N.Y.S.2d at 724. In *Quinones,* a plaintiff was injured after her heel became caught in a crack or defect in a step located inside a restaurant and she fell. The covering on the step had been worn through and was filled with pits and holes. The court held that the condition of the steps did not constitute a significant structural or design defect, and granted summary judgment to the landlord of the restaurant.

■ In this case, the specific violation alleged, the circumvention of the hoistway door

interlock, likewise is not a significant structural or design defect. The fact that the interlocks were circumvented does not mean that their structure or design was defective. In fact, plaintiffs' expert indicated that any interlock system may be overridden. The violation of Rule 111.11 relates to a condition of the interlock system, not to the interlock system itself. Thus, plaintiffs have failed to demonstrate a significant structural or design defect in violation of a specific statutory provision. Accordingly, the Hahn Defendants did not have constructive notice of any alleged defects in the Garage's elevator and did not owe a duty to the plaintiffs. As plaintiffs cannot satisfy the prima facie elements of negligence, the Court grants summary judgment to the Hahn Defendants.[1]

## CONCLUSION

For the reasons stated above, the Hahn Defendants' motion for summary judgment is HEREBY GRANTED. The remaining parties are directed to appear for a pre-trial conference in Courtroom 18B at 500 Pearl Street on March 6, 1998, at 11:30 a.m.

**SO ORDERED.**

---

**1.** The Hahn Defendants also argue that the actions of Cizi were so unforeseeable that their own actions cannot be the proximate cause of King's injuries. The Court determines, *supra*, that the Hahn Defendants owed no duty to the plaintiffs. Therefore, the Court need not and does not address the proximate cause issue.