OPINION OF THE COURT
 

 Graffeo, J.
 

 After playing a few innings of softball at an athletic field located at John F. Kennedy High School, a public school in the Bronx, plaintiff claims that he left the field and headed toward an adjacent set of bleachers. He climbed five rows of seating and sat on the top row. There were no handrails on either of the open ends of the bleachers. Ten minutes later, when it began to rain, plaintiff attempted to descend the bleachers. After taking his first step, he lost his balance and fell approximately four feet to the ground below, sustaining injuries.
 

 Plaintiffs ensuing negligence action against defendants City of New York and New York City Board of Education was based on an alleged violation of section 27-531 (a) (8) (d) of the New
 
 *733
 
 York City Building Code, entitled “Seating in assembly spaces.” This provision states:
 

 “(8) protective guards. Protective guards shall be provided for seating and standee areas as follows: * * *
 

 “d. A protective guard at least twenty-six inches high above seat level shall be provided at the open ends of bleacher seating, extending from the front of the third row of seats to the back of the highest row of seats, and continuously along the rear of the seating, except where the seating is adjacent to a wall.”
 

 The trial court granted plaintiffs motion for a directed verdict on liability, holding that defendants’ violation of section 27-531 constituted negligence per se. The issues of causation and damages, however, were submitted to the jury, which found defendants 100% liable for plaintiffs injuries. Plaintiff was awarded past and future pain and suffering damages, together with a past and future lost earnings award. The Appellate Division modified the judgment on the facts by directing a new trial on the issue of future lost earnings, unless plaintiff stipulated to a reduced award, and otherwise affirmed (267 AD2d 62). Plaintiff stipulated to a reduction in his award. We granted defendants leave to appeal to this Court (95 NY2d 759), and now reverse and order a new trial.
 

 The central dispute in this appeal is whether it was proper for the trial court to determine that, as a matter of law, defendants were negligent based on a violation of section 27-531 (a) (8) (d) of the New York City Building Code, enacted as part of the Administrative Code of the City of New York. Defendants contend that a violation of this provision constitutes only some evidence of negligence.
 

 In analyzing whether a violation of this Administrative Code section should be viewed as negligence per se or as some evidence of negligence, we consider the origin of this provision. Consistent with the City’s power to enact local laws, this particular provision dealing with protective guards on bleachers was passed by the City Council and approved by the Mayor in 1968
 
 (see,
 
 Local Laws, 1968, No. 76 of City of New York;
 
 see also,
 
 1 Local Laws of Cities, Counties, Towns and Villages in State of NY Enacted during 1968, at 348). It was then designated as section C26-801.7 of the City’s existing Administrative Code.
 

 
 *734
 
 In the early 1980’s, the Administrative Code was recodified in order to simplify its confusing numbering system, eliminate obsolete or unconstitutional provisions and reorganize its provisions by subject matter rather than by agency reference
 
 (see,
 
 Council of City of NY, Report of Governmental Operations Comm and Off of Corporation Counsel, Apr. 3, 1985, Bill Jacket, L 1985, ch 907, at 22-31). Pursuant to a home rule message from the City of New York,
 
 [1]
 
 the State Legislature enacted the recodified Administrative Code, effective September 1, 1986
 
 (see,
 
 L 1985, ch 907). The protective guardrail provision at issue then became section 27-531 (a) (8) (d) in the recodified Administrative Code, with no substantive change in its language from its inception in 1968.
 

 This Court has long recognized a distinction between State statutes on the one hand, and local ordinances or administrative rules and regulations on the other, for purposes of establishing negligence
 
 (see, Long v Forest-Fehlhaber,
 
 55 NY2d 154, 160;
 
 see also, Rizzuto v Wenger Contr. Co.,
 
 91 NY2d 343, 349). As a rule, violation of a State statute that imposes a specific duty constitutes negligence per se, or may even create absolute liability
 
 (see, Van Gaasbeck v Webatuck Cent. School Dist. No. 1,
 
 21 NY2d 239, 243). By contrast, violation of a municipal ordinance constitutes only evidence of negligence
 
 (see, Martin v Herzog,
 
 228 NY 164, 169).
 

 The rationale for this distinction was enunciated in
 
 Major v Waverly & Ogden
 
 (7 NY2d 332), which involved a claim dependent upon a violation of rules established by the State Building Code Commission and adopted by the Village of Mamaroneck. Cautioning that the elevation of a violation of an ordinance, or administrative rule or regulation, to a negligence per se standard would “substantially recast” the common law of the State, this Court found that such a change in import and status was more properly left to the Legislature and not to a “subordinate rule-making body” such as the Commission or local government
 
 (id.,
 
 at 335-336). Further, we contrasted the procedures for amending or repealing the Commission’s rules with State statutes which, “ ‘once passed, cannot be changed or varied according to the whim or caprice of any officer, board or individual’ ”
 
 (id.,
 
 at 336 [quoting
 
 Schumer v Caplin,
 
 241 NY 346, 351]). Based primarily on these two considerations, the Court held
 
 *735
 
 that a violation of the State Building Construction Code, which had been adopted by the Village, constituted only some evidence of negligence.
 

 The same concerns expressed in
 
 Major
 
 are relevant here. Significantly, the Administrative Code states that the recodification by the Legislature “shall not be construed as validating, ratifying or conforming any provision” of the pre-existing Administrative Code to State law. (Administrative Code § 1-102). Thus, the recodified Administrative Code cannot be equated with the enactment of a State statute.
 
 [2]
 
 Further, the 1985 recodification preserved the City’s authority to amend or repeal provisions of the Code:
 

 “§ 1-103 Effect of local law. This chapter shall not operate to deprive the local legislative body of the city of New York of the power to enact local laws in relation to any matter in respect to which such power would otherwise exist, nor shall it limit such power.
 
 If this power otherwise exists, any provision of this chapter may be superceded, supplemented or amended by local law in the same manner and to the same extent as such provisions could be super-ceded, supplemented or amended had this chapter not been enacted”
 
 (Administrative Code § 1-103 [emphasis added]).
 

 To surmount this “local law” designation and justify treatment under a negligence per se standard of care, plaintiff relies on our line of cases that have treated sections of the Administrative Code that impose a specific duty as having the “force of statute” in the City of New York
 
 (see, e.g., Juarez v Wavecrest Mgt. Team,
 
 88 NY2d 628, 645;
 
 Bittrolff v Ho’s Dev. Corp.,
 
 77 NY2d 896, 899 n;
 
 Guzman v Haven Plaza Hous. Dev. Fund Co.,
 
 69 NY2d 559, 565 n 3). This reliance is, however, misplaced. Those decisions merely restate the basic proposition that a provision of the Administrative Code, similar to a statute, is the controlling authority “within its sphere of operation”
 
 (Martin v Herzog, supra,
 
 228 NY, at 169). Whether a section of the
 
 *736
 
 Administrative Code has the force of statute with respect to application does not determine its tort consequences. As has been noted, a declaration that a local ordinance or an administrative rule or regulation “ ‘has the force and effect of law does not make it so, if by that is meant that it is the equivalent of or equal to a legislative enactment. The Constitution of the State commits to the Legislature alone the power to enact a statute’
 
 (Schumer v Caplin, supra,
 
 p. 351). It is
 
 only
 
 to such an enactment that liability without regard to negligence may attach”
 
 (Major v Waverly & Ogden, supra,
 
 7 NY2d, at 336 [emphasis added]).
 

 Despite plaintiffs contention,
 
 Juarez v Wavecrest Mgt. Team
 
 (supra) is not to the contrary. In
 
 Juarez,
 
 we held that a violation of an Administrative Code provision that did not impose a specific duty did not constitute negligence per se. We specifically declined to address the tort implications of an Administrative Code provision that mandates a specific duty. Now that this issue is before us, we hold that, for tort purposes, even a specific duty provision in the Administrative Code must be treated as any other local enactment if its status is that of a local law. The specific nature of the duty imposed does not ameliorate the concerns expressed in
 
 Major
 
 that only an enactment of the Legislature can alter the State common law of negligence. We do, however, acknowledge that certain sections of the Administrative Code have their origin in State law
 
 (see, Guzman v Haven Plaza Hous. Dev. Fund Co., supra,
 
 69 NY2d, at 565 n 3) and, as such, they might be entitled to statutory treatment in tort cases. But characterizing the vast multitude of ordinances that have been adopted by New York City as State statutes would result in considerable fragmentation and uncertainty in the application of the common law of our State.
 
 [3]
 
 Furthermore, since the City retains the authority to amend or repeal its Administrative Code provisions, including section 27-531, without the need of State legislative action, we decline to transform the status of this provision from that of a local enactment to a State statute. In the absence of a violation of a statutorily imposed duty in this case, a negligence per se finding was unwarranted and defendants are entitled to a reversal and a new trial.
 

 
 *737
 
 This holding is consistent with the reasoning set forth in
 
 Smulczeski v City Ctr. of Music & Drama
 
 (3 NY2d 498).
 
 Smulczeski
 
 involved a negligence action premised on an alleged violation of section C26-743.0 of the former Administrative Code, which imposed a duty on theater owners to provide proper lighting of their premises during performances. Although the primary issue was the propriety of the jury charge regarding prior notice, the Court determined that, as an ordinance, a violation of this provision was evidence of negligence.
 

 Finally, defendants’ remaining argument, that section 27-531 (a) (8) (d) does not apply to the set of bleachers that plaintiff fell from, is unpreserved.
 

 Accordingly, the judgment appealed from and the order of the Appellate Division brought up for review should be reversed, with costs, and a new trial ordered.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick, Wesley and Rosenblatt concur.
 

 Judgment appealed from and order of the Appellate Division brought up for review reversed, etc.
 

 [1]
 

 . Plaintiff did not dispute that the State Legislature’s approval of the Administrative Code was required by Municipal Home Rule Law § 40 and article IX, § 2 (b) (2) of the State Constitution.
 

 [2]
 

 . Even the original 1937 codification of the Administrative Code made clear that it was not meant to transmogrify local law provisions into statutes. In its statement of legislative intent, the Legislature declared: “Insofar as such act revises, consolidates, codifies, continues or restates the provisions of any statutes, local laws or ordinances, applicable to the city of New York * ** * such provisions shall be deemed unchanged in substance and effect except as may be necessary to harmonize them with such New York city charter” (former Administrative Code § 1151-1.0).
 

 [3]
 

 . With over 1,605 local governments and 6,374 independent town and county special districts (see, State of New York Department of State Local Government Handbook, Foreword [5th ed 2000]), the implications of extending statutory status to local ordinances in negligence cases would create a patchwork of the common law in our State.