OPINION OF THE COURT
Tom, J.P
This appeal presents the narrow issue of whether a municipal ordinance imposes absolute liability for its violation so as to warrant summary judgment in favor of plaintiffs, the owner and tenant of the subject premises, for damage resulting from defendants’ excavation on the adjacent property. The controversy is governed by this Court’s decision in Coronet Props. Co. v L/M Second Ave. (166 AD2d 242 [1990]), which is wholly dis-positive. There is evidence, in the form of engineers’ affidavits and reports, that the subject building was in poor structural *227 condition prior to the commencement of the excavation work (including a south wall out of plumb by four inches and large cracks in the south and west walls), that defendants took necessary measures to protect the foundation and that the building had been shored and temporarily braced. The record thus presents issues of fact concerning whether defendants’ activities were the cause of the damage alleged and whether defendants exercised the requisite degree of care in performing the work.
Defendants undertook excavation on property adjoining a 136-year-old building located at 287 Broadway. Plaintiff Randall Co., LLC is the owner of the building, and plaintiff Yenem Corp. operated a pizzeria on the premises. Plaintiffs assert that defendants’ excavation work undermined the foundation, causing the building to lean by approximately nine inches. As a consequence, the Department of Buildings issued a vacate order that remains in effect. Yenem commenced an action for economic loss against defendant 281 Broadway Holdings LLC, the owner and developer of the adjacent property, its parent, defendant The John Buck Company, and Hunter-Atlantic, Inc., the excavator for the project. Shortly thereafter, Randall commenced its own action against 281 Broadway and John Buck for damage allegedly caused by the excavation.
It is undisputed that the work was at all times subject to the requirements of Administrative Code of the City of New York § 27-1031 (b) (1) (now Administrative Code, tit 28, § 3309.4), which imposes liability on an owner and contractor for damage to adjacent structures caused by major excavation. The municipal ordinance provides:
“When an excavation is carried to a depth more than ten feet below the legally established curb level the person who causes such excavation to be made shall, at all times and at his or her own expense, preserve and protect from injury any adjoining structures, the safety of which may be affected by such part of the excavation as exceeds ten feet below the legally established curb level provided such person is afforded a license to enter and inspect the adjoining buildings and property.” (Id.)
In their respective motions for summary judgment, plaintiffs sought to obviate the need to determine any factual issues concerning the cause of the damage to the building and the adequacy of precautions taken by defendants to protect the structure. Plaintiffs invoked case law holding that the Adminis *228 trative Code “imposes absolute liability upon any one who causes an excavation to be made more than 10 feet below the curb level without taking adequate preliminary precautions to protect ‘adjoining’ structures” (Victor A. Harder Realty & Constr. Co. v City of New York, 64 NYS2d 310, 318 [1946] [imposing liability after trial]). In the Yenem action, Supreme Court (Carol Edmead, J.), in a decision issued from the bench, denied Yenem’s motion for partial summary judgment on the issue of liability, noting that a violation of “[A]dministrative [C]ode Section 27-1031, and other sections like that in the [A]dministrative [C]ode, constitute[s] some evidence of negligence only . . . [I]t doesn’t result in a finding of liability and a resulting summary judgment, it just doesn’t go that far.”
In support of its motion for partial summary judgment on the issue of liability, Randall submitted an engineer’s affidavit attesting that the building was stable prior to the commencement of excavation and that after the work began the structure tilted dangerously to the south despite internal and external bracing installed by defendants. Defendants opposed the motion and, inter alia, sought leave to amend their answer to add counterclaims against Randall. As pertinent to this appeal, Supreme Court (Charles E. Ramos, J.) reached the opposite conclusion with respect to absolute liability under Administrative Code § 27-1031 (b) (1), summarily awarding judgment as to liability to Randall and denying defendants leave to amend the answer.
Plaintiffs take the position that because the governing Administrative Code provision was originally enacted as an 1855 state law imposing absolute liability {see Dorrity v Rapp, 72 NY 307, 310-311 [1878]), it should continue to be construed as imposing a duty and liability that are absolute, despite being relegated to a municipal ordinance since 1899, when the state statute was repealed and its terms incorporated into the Administrative Code. Plaintiffs’ view is inconsistent with appellate authority governing both the power of a municipality to impose tort liability and the nature of the liability imposed by Administrative Code § 27-1031 (b) (1).
The general principle is stated in Elliott v City of New York (95 NY2d 730, 734 [2001]): “As a rule, violation of a State statute that imposes a specific duty constitutes negligence per se, or may even create absolute liability. By contrast, violation of a municipal ordinance constitutes only evidence of negligence.” (Citations omitted.) In Elliott, the plaintiff argued that because the Administrative Code had been recodified by the New York *229 State Legislature, the controlling provision should be regarded as a state statute and its violation as negligence per se. However, the Court of Appeals stated that in deciding whether such treatment is appropriate, the origin of the provision should be considered (id. at 733). It concluded that recodification by the Legislature did not provide Administrative Code provisions with the force of state law (id. at 735), stating that, “for tort purposes, even a specific duty provision in the Administrative Code must be treated as any other local enactment if its status is that of a local law” (id. at 736). The Court then proceeded, in dictum, to “acknowledge that certain sections of the Administrative Code have their origin in State law and, as such, they might be entitled to statutory treatment in tort cases” (id., citing Guzman v Haven Plaza Hous. Dev. Fund Co., 69 NY2d 559, 565 n 3 [1987] [emphasis added]).
It should be noted that Elliott dealt with the obverse proposition to the one advanced by plaintiffs on this appeal. Elliott holds only that a municipal ordinance does not gain the force of state law merely because it is included in a municipal code enacted by the Legislature. So much is clear from the expressed concern that “characterizing the vast multitude of ordinances that have been adopted by New York City as State statutes would result in considerable fragmentation and uncertainty in the application of the common law of our State” (id. at 736).
The matter at bar presents the question of whether a provision originally enacted as a state statute retains its status as such even though the Legislature has repealed the statute and simultaneously incorporated the provision into a municipal code. The Elliott Court emphasized that the critical distinction between state and local law is that a state statute can only be changed by the Legislature, whereas a state administrative code or local ordinance can be modified by a state commissioner or a local government (id. at 734; see e.g. Major v Waverly & Ogden, 7 NY2d 332, 336 [1960] [state building code]). The Elliott Court regarded violation of the Administrative Code provision before it as only evidence of negligence, not negligence per se, reasoning that “since the City retains the authority to amend or repeal its Administrative Code provisions . . . without the need of State legislative action, we decline to transform the status of this provision from that of a local enactment to a State statute” (95 NY2d at 736).
To recapitulate, while the Elliott Court acknowledged the potential for statutory treatment of those Administrative Code *230 provisions having their origin in state law, the Court expressly declined to accord such status to the provision before it. One salient feature of a state law, said the Court, is that once it is enacted by the Legislature, it “cannot be changed or varied according to the whim or caprice of any officer, board or individual” {id. at 734 [internal quotation marks omitted]). Because the City can—and has—amended the Administrative Code provision governing excavation work, it is an equally unsuitable candidate for elevation to the status of a state statute imposing per se negligence or absolute liability.
The example of a local ordinance that was accorded treatment similar to a state statute cited by the Elliott Court was Guzman (69 NY2d at 565 n 3). There, the Court of Appeals applied case law developed under state law (Multiple Dwelling Law § 78) to the duty imposed on a landowner under the Administrative Code to safely maintain a building and its facilities (69 NY2d at 565-566). Guzman holds that, having reserved a right to reenter the premises to make inspections and repairs, an out-of-possession owner is liable for injuries resulting from a breach of general and specific safety provisions of the Administrative Code under the authority of Tkach v Montefiore Hosp. (289 NY 387 [1943]) and Worth Distribs. v Latham (59 NY2d 231 [1983]), both of which construe the State’s Multiple Dwelling Law § 78. Significantly, Guzman is not a case that purports to subject an owner to absolute liability; rather, it adheres to general tort principles, finding constructive notice as a result of the reserved right of reentry and predicating liability on breach of the duty to maintain the premises in safe condition (69 NY2d at 566-567). Moreover, since the duty of an owner to safely maintain premises is imposed in the City of New York by both a state statute {see e.g. Pekelnaya v Allyn, 25 AD3d 111, 117 [2005]) and a municipal ordinance {see e.g. Wolf v 2539 Realty Assoc., 161 AD2d 11, 14 [1990]), it was altogether logical to extend precedent developed under the state law to a violation involving a parallel provision contained in the Administrative Code.
As the preceding discussion illustrates, plaintiffs have cited no authority binding on this Court holding that Administrative Code § 27-1031 (b) (1) or its successor (Administrative Code, tit 28, § 3309.4) imposes per se negligence or absolute liability on a party that undertakes excavation work covered by the ordinance. Shortly after the Court of Appeals issued its ruling in Elliott, this Court concluded that a violation of the Administrative Code is simply evidence of negligence, “with the exception of those *231 Code provisions the content of which was approved or adopted by the Legislature” (Huerta v New York City Tr. Auth., 290 AD2d 33, 41 [2001], appeal dismissed 98 NY2d 643 [2002]). As we noted in Huerta, the Court of Appeals’ decision in Elliott does not identify what Administrative Code provisions meet this criterion {id. n 5), and the only Court of Appeals case cited by plaintiffs that accords statutory treatment to an ordinance is Guzman, and then only for the limited purpose of applying precedent established under state law to the equivalent provision in the Administrative Code.
The controlling precedent in this Department is Coronet Props. Co. v L/M Second Ave. (166 AD2d 242 [1990], supra). While acknowledging several cases purporting to impose absolute liability under Administrative Code § 27-1031 (b) (1) upon both the property owner and the contractor (citing Harder, 64 NYS2d at 318; Levine v City of New York, 249 App Div 625 [1936] [lateral support, deprivation of which results in absolute liability, not governed by Greater New York Charter]; Palermo v Bridge Duffield Corp., 154 NYS2d 288 [1956], affd 3 AD2d 863 [1957] [motion to set aside jury verdict denied]), we noted that “in these and other cases relied upon by plaintiffs, liability was determined after trial upon findings that defendants had failed to take adequate precautions to protect adjoining structures and that defendants’ activities were the proximate cause of the damage” (166 AD2d at 243). We then denied the plaintiffs’ motion for partial summary judgment on the issue of liability, holding that “[t]hese factual issues, together with evidence of the poor condition of the allegedly damaged buildings and of other possible causes of the damage, preclude summary disposition of this matter” {id.).
In the matter before us, neither Randall nor Yenem established that defendants violated Administrative Code § 27-1031 (b) (1), that defendants’ actions were the proximate cause of the damage to the building or that the precautions taken by defendants in connection with the excavation were inadequate. The affidavits of defendants’ expert structural engineer, Brad Keiffer, and the report of the GACE engineering firm not only detailed numerous steps taken to ensure adequate protection of the building foundation during excavation, but also enumerated possible defects in the building that might have caused or contributed to its becoming unsound. Among other things, the engineers opined that the building was in poor condition prior to commencement of the excavation work and that various fac *232 tors could have contributed to the damage, including, the structure was already out of plumb approximately four inches to the south, there were preexisting cracks in the south and west walls, parapets were out of plumb with cracks and open mortar joints, the building lacked a lateral support system, soil stresses were higher than typically allowable as a result of a backfilled subcellar, and the original foundations required remediation.
In sum, this Court perceives no reason to depart from the precedent established by Coronet Props. Co., which is indistinguishable from the matter at bar. Plaintiffs have not demonstrated the existence of compelling circumstances so as to warrant departure from the doctrine of stare decisis (see Eastern Consol. Props, v Adelaide Realty Corp., 95 NY2d 785 [2000]; see also Holy Props, v Cole Prods., 87 NY2d 130, 134 [1995]; Conven, Inc. v Bethlehem Steel Corp., 41 NY2d 842, 843 [1977]). In Coronet, as here, the damaged building was in poor condition prior to excavation, and factual questions were raised concerning whether the defendants’ activities were the proximate cause of the plaintiffs’ loss and whether the defendants breached their statutory duty to take adequate precautions to protect adjoining structures (see 166 AD2d at 243). The imposition of absolute liability and summary disposition are precluded where a trier of fact might find that defendants undertook all necessary precautions to shore and brace the adjoining building, the excavation work was performed without negligence and damage was solely attributable to the building’s dilapidated condition and the excessive forces exerted upon its foundation due to earlier back-filling.
Defendants’ proposed amended answer asserting affirmative defenses and counterclaims against Randall is apparently meritorious and will neither prejudice nor surprise that plaintiff (see Lettieri v Allen, 59 AD3d 202 [2009]).
Accordingly, the order of the Supreme Court, New York County (Carol R. Edmead, J.), entered September 18, 2008, which, to the extent appealed from, denied plaintiff Yenem Corp.’s motion for summary judgment on the issue of liability, should be affirmed, without costs. The order of the Supreme Court, New York County (Charles E. Ramos, J.), entered January 29, 2009, which, to the extent appealed from as limited by the briefs, granted plaintiff Randall Co., LLC’s motion for summary judgment on the issue of liability and denied the cross motion of defendants 281 Broadway Holdings and The John Buck *233 Co. for, inter alia, leave to amend their answer, should be reversed, on the law, without costs, to deny plaintiffs motion and grant defendants leave to amend their answer to assert counterclaims against plaintiff.