Catterson, J. (dissenting).
I must respectfully dissent
because the provision at issue, though now part of the Administrative Code of the City of New York, had its origin in state law; therefore absolute liability may be imposed if a plaintiff can prove that violation of the provision was the proximate cause of injuries. Moreover, in this case, affidavits submitted by the defendants constitute written admissions that they violated the provision by failing to protect the adjoining structure during excavation operations. This failure proximately caused the structure to list more than three inches resulting in a New York City Department of Buildings (hereinafter referred to as DOB) order to vacate. Therefore, summary judgment on liability should be granted to plaintiff Yenem, and should be affirmed as to plaintiff Randall Co., LLC.
287 Broadway (hereinafter referred to as the building) is a 136-year-old landmark cast-iron and masonry building located on the southwest corner of the intersection of Reade Street and Broadway. The building is owned by plaintiff, Randall Co., LLC. Until the DOB ordered the building to be vacated in November 2007, it contained four residential and three commercial units. One of the commercial units was a pizza parlor owned by plaintiff, Yenem Corp.
In 2006, defendant The John Buck Company (hereinafter referred to as John Buck), through its subsidiary, 281 Broadway Holdings LLC, purchased and began developing an L-shaped 20-story commercial and residential complex connecting the now-vacant properties adjacent to the south and west sides of Randall’s building. The excavator on the project was Hunter-Atlantic, Inc. (hereinafter referred to as Hunter).
While excavating the property next to the building, at a depth of more than 10 feet, movement and undermining of the building occurred when Hunter began underpinning the southwest corner. The movement was allegedly caused by the undermining of the existing footing and a loss of soil under the footing of the building. As a result of the movement and undermining, the DOB issued a vacate order on November 29, 2007. The reason given was that the building was leaning approximately nine inches out of plumb with structural cracks and was deemed too dangerous to occupy. The DOB ordered temporary shoring *234 installed to prevent the total collapse of the building or any further listing.
Yenem’s pizza business was established at the site at a cost of approximately $700,000 and opened prior to the vacate order. Yenem installed new kitchen equipment and heating and air conditioning. Yenem had a favorable lease, and commenced its action against 281 Broadway, John Buck and Hunter for economic losses, alleging negligence and absolute liability for the structural damage resulting in the destruction of Yenem’s business. Yenem states that the vacate order remains in effect to this day.
Yenem moved for summary judgment as to liability, asserting that the defendants were strictly liable under Administrative Code of the City of New York § 27-1031 (b) (1) when the performance of excavation of more than 10 feet below curb level affects the adjacent building. Yenem further argued that there was no defense to the undermining of the building, and that the only issue was the amount of damages and the percentage of liability to be determined among defendants and third-party defendants which “will involve extensive litigation at to indemnification and subrogation,” and that Yenem is entitled to its damages without delay.
281 Broadway and John Buck opposed, arguing that Yenem did not meet its burden in demonstrating liability as material issues of fact existed regarding the adequacy of the excavation precautions, that the building was in poor condition prior to excavation, and that discovery had not been completed. In addition, they cross-moved for leave to amend their answer to assert additional affirmative defenses and cross claims against Hunter and for summary judgment on their claims against Hunter.
By order entered September 18, 2008, in accordance with the oral argument transcript, the court (Edmead, J.) denied the motion and cross motion for summary judgment, and granted the cross motion for leave to assert additional affirmative defenses and cross claims against Hunter. Although Justice Edmead recognized that the excavation activities caused the damage to the building and that Yenem was faultless, the court denied Yenem’s summary judgment motion, holding that a violation of Administrative Code § 27-1031 (b) does not result in absolute liability but is “some evidence of negligence.” Furthermore, the court held that a jury must determine the proximate cause of the damage.
In the meantime, Randall commenced its own action against 281 Broadway and John Buck, alleging that the excavation by *235 defendants of the adjacent property, “which had provided lateral support to [the building’s] foundation, undermined that foundation causing the building to tilt dangerously to the south.” Randall set forth two causes of action, the first for absolute liability under Administrative Code § 27-1031 (b) (1) and a second alleging general negligence. Randall moved for partial summary judgment on the basis of absolute liability. In support, Randall submitted an engineer’s affidavit stating that the building was stable before the excavation, that the damage causing the DOB vacate order was caused by the excavation, and that the building was still moving despite the installation by defendants of internal and external shoring and bracing.
The defendants opposed and cross-moved for both summary judgment in their third-party action against Hunter as the excavator, and for leave to amend their answer to assert affirmative defenses and counterclaims against Randall, and cross claims against Hunter. In their opposition, the defendants argued that there existed issues of fact as to liability, prematurity and proximate cause. In particular, the defendants denied any failure to preserve and protect the building, contending that it was in disrepair prior to construction, and that there were various factors which may have caused the building to become unsound, including, inter alia, its poor condition, cracks in the south and west walls, parapets out of plumb, and a lack of a lateral support system required by the current Building Code.
The defendants also raised the issue of the Zoning Lot Development and Easement Agreement (hereinafter referred to as ZLDA), a contract between Randall and defendants, which contained covenants allegedly at issue here which defendants claim Randall breached.
By order entered January 29, 2009, the court (Ramos, J.) granted Randall’s motion for partial summary judgment on liability, denied defendants’ cross motion for summary judgment with leave to renew and denied defendants’ cross motion in all other respects. The court held that Administrative Code § 27-1031 (b) imposed absolute liability upon defendants in the matter and that the ZLDA was inapplicable. This Court stayed the damages trial and related discovery.
On its appeal, Yenem argues that Justice Edmead erred in denying its motion for summary judgment on the issues of defendants’ absolute liability under the Administrative Code; that defendants are liable under common-law negligence; and that any unresolved question of percentage of negligence as between *236 the various defendants and third-party defendants does not defeat Yenem’s right to summary judgment as to liability.
On their appeal, the defendants 281 Broadway and John Buck argue that Justice Ramos erred in imposing absolute liability on them under Administrative Code § 27-1031 since absolute liability cannot be imposed under an administrative code; that the former statute upon which section 27-1031 was based does not fall into the category of statutes imposing absolute liability; that Randall failed to establish a violation of section 27-1031; that such liability is only imposed after a determination of proximate cause and after trial; that the cross motion to amend the answer should have been granted; that should this Court determine that liability was appropriate, Randall’s request for $250,000 representing lost rents should not be awarded as it was unsubstantiated; and that the court incorrectly determined that the ZLDA was inapplicable.
For the reasons set forth below, I believe that plaintiff Yenem should have been granted summary judgment on liability. For the same reasons, I disagree with the defendants and would affirm Justice Ramos’s order in Randall Co., LLC v 281 Broadway Holdings.
The provision at issue is Administrative Code § 27-1031 (b) (1), which, in pertinent part, states:
“When an excavation is carried to a depth more than ten feet below the legally, established curb level the person who causes such excavation to be made shall, at all times and at his or her own expense, preserve and protect from injury any adjoining structures, the safety of which may be affected by such part of the excavation as exceeds ten feet below the legally established curb level.”[1]
At the outset, I reject the defendants’ argument that absolute liability cannot be applied to a provision of the Administrative Code. The defendants contend that the Court of Appeals has held that a violation of an administrative code or any local *237 ordinance cannot result in a finding of absolute liability but is rather only “some evidence of negligence.” For this proposition the defendants rely on Elliott v City of New York (95 NY2d 730 [2001]) in which the Court held that “[a]s a rule, violation of a State statute that imposes a specific duty constitutes negligence per se, or may even create absolute liability. By contrast, violation of a municipal ordinance constitutes only evidence of negligence.” (95 NY2d at 734 [citations omitted].) They further point to the Court’s reiteration that the “elevation of a violation of an ordinance, or administrative rule or regulation, to a negligence per se standard would ‘substantially recast’ the common law of the State.” (95 NY2d at 734, quoting Major v Waverly & Ogden, 7 NY2d 332, 335 [I960].)
In my opinion, the defendants have misread Elliott (see Huerta v New York City Tr. Auth., 290 AD2d 33 [1st Dept 2001], appeal dismissed 98 NY2d 643 [2002]; see also Smulczeski v City Ctr. of Music & Drama, 3 NY2d 498 [1957]), which, in any event, deals with non-excavation Building Code violations. The Elliott Court clearly acknowledged that there are some violations of the Administrative Code that may constitute negligence per se and even impose absolute liability. Indeed, the Elliott Court provided a guideline as to how to identify such violations. The Court clearly stated that “[i]n analyzing whether a violation of [an] Administrative Code section should be viewed as negligence per se or as some evidence of negligence, we consider the origin of [the] provision.” (95 NY2d at 733 [emphasis added].)
In further clarification, the Court held that “certain sections of the Administrative Code have their origin in State law and, as such, they might be entitled to statutory treatment in tort cases.” (95 NY2d at 736 [citation omitted].) In other words, the Court acknowledged that absolute liability could be imposed upon the violation of an Administrative Code provision that had started life as a statute enacted by the Legislature. This fits the provision at issue to the proverbial tee.
In 1855, the Legislature enacted section 1 of chapter 6 of the Laws of the State of New York and changed the common law regulating adjoining lands and excavation to protect adjoining structures as well as the land in New York County and Brooklyn. Chapter 6 was subsequently reenacted pursuant to the Consolidation Act (L 1882, ch 410, § 474) but the wording of the statute remained essentially the same. In pertinent part, it stated:
“Whenever excavations, for building or other *238 purposes, on any lot or piece of land in the city and county of New York, shall be intended to be carried to the depth of more than ten feet below the curb, and there shall be any party or other wall, wholly or partly on adjoining land and standing upon or near the boundary lines of such lot, the person causing such excavations to be made . . . shall at all times from the commencement until the completion of such excavations, at his own expense, preserve such wall from injury, and so support the same by a proper foundation that it shall remain as stable as before the excavations were commenced.”
The Court of Appeals interpreted the statute as imposing absolute liability. In 1878, the Court held as follows:
“[t]he primary object of the statute [is] to cast upon the party . . . the risk of injury resulting therefrom to the wall of an adjoining owner, and the burden of protecting it. The liability imposed is not made to depend upon the degree of care. . . [T]he duty and liability which the statute imposes is absolute and unqualified.” (Dorrity v Rapp, 72 NY 307, 311 [1878] [emphasis added].)
The statute remained in effect until the enactment of the Building Code of New York City in 1899 whereupon section 22 of the New York City Building Code replaced section 474 to govern the area of law regarding excavations and adjoining properties. Subsequently, the Building Code was incorporated into the New York City Administrative Code and the provision at issue became section C26-385.0. It stated as follows:
“Whenever an excavation is carried to a depth of more than ten feet below the curb, the person who causes such excavation to be made shall, if afforded the license necessary to enter the adjoining premises, at all times and at his own expense, preserve and protect from injury any structure, the safety of which may be affected by such part of the excavation as extends more than ten feet below the curb, and such person shall support the adjoining structure by proper foundations . . . .” (§ C26-385.0 [a].)
Finally, the provision became section 27-1031 (b) (1) of the Administrative Code, and stated (common phrases to both the foregoing and following provisions are italicized):
“When an excavation is carried to a depth more *239 than ten feet below the legally established curb level the person who causes such excavation to he made shall, at all times and at his or her own expense, preserve and protect from injury any adjoining structures, the safety of which may be affected by such part of the excavation as exceeds ten feet below the legally established curb level provided such person is afforded a license to enter and inspect the adjoining buildings and property.”
It is evident, therefore, that neither the wording nor the import of the statute was materially or substantively altered as the provision became incorporated into first, the Building Code, and subsequently the Administrative Code of New York City. Indeed, nothing could be clearer upon a comparison of the text of each subsequent enactment than that the current Code provision originated as a statute enacted by the Legislature.
Moreover, for almost 150 years the imposition of absolute liability has remained constant whether the provision was in the form of a statute, or as a section of the Building Code or the Administrative Code. For example, in 1909, the Second Department held that the “[Building C]ode has the same force and effect as a statute” and found that plaintiff had established a case “within the provisions of a statute which imposed duties and liabilities absolute, unqualified, and in no manner dependent upon the degree of care exercised by the defendant in the conduct of his building operations.” (Post v Kerwin, 133 App Div 404, 405-406 [2d Dept 1909].) The Court held “statutory liability cannot be avoided by showing that in the work the defendant exercised due care and was free from negligence.” (133 App Div at 406.)
In 1911, the court in Bloomingdale v Duffy (71 Misc 136 [1911]) interpreted section 22 of the Building Code as providing for absolute and unqualified liability regardless of the degree of care used. In that case, the Appellate Term, First Department, looking at the intent of the Legislature, observed that “this section of the [B]uilding [C]ode has the effect of a statute and is based upon section 474 of the Consolidation Act of 1882.” (71 Misc at 138.)
In Victor A. Harder Realty & Constr. Co. v City of New York (64 NYS2d 310 [1946]), the court found that section C26-385.0 of the Administrative Code was a derivation of the statute and imposed absolute liability. In that case, the court, while deeming the work and excavation operations to conform to the “highest *240 engineering standards” and “despite the absence of negligence” found the defendants strictly liable under the Administrative Code for failing to support plaintiffs adjoining structures. (Id. at 316, 320.)
In Coronet Props. Co. v L/M Second Ave. (166 AD2d 242, 243 [1st Dept 1990]), this Court, while largely misinterpreting precedent as detailed below, nevertheless correctly relied on Harder to recognize that section 27-1031 (b) (1) imposes absolute liability upon both the property owner and contractor performing excavation of more than 10 feet which causes damage to the adjacent property.
Given the foregoing, I would reject the defendants’ attempts to turn the simple phrase “origin in State law” on its head. In a tortuous—and, indeed, tortured—analysis of Elliott and Guzman v Haven Plaza Hous. Dev. Fund Co. (69 NY2d 55 [1987]), an earlier decision cited in Elliott, the defendants argue that “origin in State law” means that there must be a concurrent version of the code provision in state law. This is an erroneous conclusion.
The Elliott Court relied on Guzman only for a footnote that reads in pertinent part: “The Administrative Code is a codification and restatement of applicable statutes and laws, general, special and local.” (Guzman, 69 NY2d at 565 n 3 [internal quotation marks and citation omitted].) In Elliott, the Court clarified the footnote by noting that the recodification of the Administrative Code in the early 1980s “shall not be construed as validáting, ratifying or conforming any provision of the pre-existing Administrative Code to State law.” (95 NY2d at 735 [internal quotation marks and citation omitted].) However, the Court added:
“[e]ven the original 1937 codification of the Administrative Code made clear that it was not meant to transmogrify local law provisions into statutes. In its statement of legislative intent, the Legislature declared: ‘Insofar as such act revises, consolidates, codifies, continues or restates the provisions of any statutes, local laws or ordinances, applicable to the city of New York . . . such provisions shall be deemed unchanged in substance and effect . . . .’ ” (Elliott, 95 NY2d at 735 n 2, quoting former Administrative Code § 1151-1.0 [emphasis supplied].)
In other words, codification did not elevate any provision preexisting in the Administrative Code into a statute, as for *241 example the provision at issue in Elliott (requirement of protective guards for bleachers). Conversely, it did not reduce a former statute to a mere local law with regard to its tort implications. (Elliott, 95 NY2d at 736.)
Equally hapless is the defendants’ argument that the Legislature repealed the statute when it was incorporated into the Building Code because the Legislature found it unnecessary to have both state and local laws pertaining to excavations; and it chose to have these matters governed by local entities, thus eliminating the imposition of absolute liability. Given that the statute was location-specific from the beginning, it is neither clear nor evident that the Legislature intended to eliminate absolute liability by turning over the administration of what was already a local law to a local entity.
I also reject the defendants’ argument that, in any event, the 1855 statute was not “of the type” that imposes absolute liability. Considering the crystal-clear analysis of that statute by the Court of Appeals in Dorrity as detailed above, the defendants’ argument merits only one conclusion and that is, that either they are not aware of or they have chosen to ignore the seminal case on the subject.
Furthermore, in my opinion, Justice Ramos properly granted partial summary judgment to plaintiff Randall on liability and Justice Edmead erred in denying summary judgment to plaintiff Yenem.
As threshold matters, the defendants are incorrect in their assertion that since Yenem is a tenant, not an adjoining landowner, it is not protected by the provision. (See Gordon v Automobile Club of Am., 101 Misc 724 [Sup Ct, NY County 1916], affd 180 App Div 927 [1st Dept 1917] [anyone having special interest in the property is entitled to sue for damages]; see also Bergen v Morton Amusement Co., Inc., 178 App Div 400 [4th Dept 1917].)
Likewise, I am unpersuaded by the defendants’ argument that other than the named defendant owners, 281 Broadway and John Buck, and the excavator Hunter, there are other parties (named as third-party defendants in Yenem) whose actions must be considered in ascertaining proximate cause. The defendants allude here to other parties who allegedly failed to ascertain certain critical conditions relevant to an excavation operation. Whatever the allegations, even if proved true, they cannot exculpate the defendant owners. Well-settled law holds that the owner of the property upon which the excavation is be *242 ing conducted is liable whether it is the owner actually making the excavation or whether another party is involved. (See Rosenstock v Lane, 140 App Div 467, 470 [1st Dept 1910] [“(t)he words ‘the person or persons causing such excavation to be made’ apply to the owner of the property who employs a third person to make such an excavation”]; see also Coronet Props, v L/M Second Ave., 166 AD2d at 243; Kimberly-Clark Corp. v Power Auth. of State ofN. Y., 35 AD2d 330 [4th Dept 1970]; Palermo v Bridge Duffield Corp., 3 AD2d 863 [1957].)
More significantly, I disagree with the defendants’ assertion that this Court’s decision in Coronet forecloses the possibility of granting summary judgment on liability. In Coronet, plaintiffs moved for partial summary judgment under Administrative Code § 27-1031 for property damage allegedly sustained during defendants’ excavation work. This Court affirmed the trial court’s denial of the plaintiffs’ motion for partial summary judgment because of the existence of issues of fact regarding the adequacy of precautions taken and evidence of the poor condition of the allegedly damaged building and of other possible causes of the damage, and failure to demonstrate that the excavation was the proximate cause of the property damage. (166 AD2d at 243.) Thus, the defendants argue that Coronet stands for the proposition that liability may only be determined after trial on a finding that defendants failed to take adequate precautions and that their excavation operations were the proximate cause of the damage.
It is, of course, well settled that absolute liability may be imposed only after defendants’ activities are found to be the proximate cause. (Victor A. Harder Realty & Constr. Co. v City of New York, 64 NYS2d at 320.) To the extent that factual issues in Coronet raised serious doubt as to the cause of the damage to the building, then our decision in Coronet is entirely distinguishable from this case. To the extent that in Coronet we determined that the adequacy of precautions and the condition of an adjoining structure are relevant factors in determining liability, we erred in our analysis of precedent and such holding should be disregarded.
As the plaintiff Randall asserts, the appellate briefs filed in Coronet make clear, as the decision unfortunately does not, that an explosion occurred “contemporaneously” with the excavation operation. This raised an issue of fact as to whether the excavation was a factor at all in the damage to the building, and so precluded summary judgment. However, contrary to the de *243 fendants’ argument, Coronet by no means mandates that a finding on proximate cause must be a post-trial conclusion.
As plaintiffs correctly assert, pursuant to CPLR 3212, affidavits and written admissions are sufficient proof on which summary judgment may be granted. Here, both Randall and Yenem established, to the extent required for summary judgment, that the defendants violated section 27-1031 by not preserving and protecting the building, and that defendants’ actions were the proximate cause of the damage to the building.
It is undisputed and uncontradicted that the excavation operations were undertaken at defendants’ premises, by the defendants, and were dug to a depth of more than 10 feet below curb level. Nor is it disputed, in any way, that defendants were engaged in excavation operations at the time the DOB ordered plaintiff Randall and plaintiff Yenem along with others to vacate the adjoining building.
On the contrary, the defendants admitted in affidavits that excavation caused the building to lean. The defendant 281 Broadway Holdings’ managing member, Greg Merdinger, stated in an affidavit in February 2008, in pertinent part:
“In May 2007 prior to the time that 281 began foundation work, ... a survey of the Building indicated that the south wall was then out of plumb approximately 4” to the south. Throughout 2007, as work on the foundation of the new construction proceeded, 287 Broadway tilted roughly an additional 3.5” southward. The [DOB] was made aware and began monitoring the movement of the Building starting in May 2007.
“On or about November 20, 2007, 281 notified [p]laintiff of 287 Broadway’s movement. We also informed the owners of the Building that we would be implementing a temporary bracing scheme, and eventually a permanent plan, both subject to the approval of the DOB.
“On December 18, 2007, the DOB ordered that the four residential and three commercial tenants of 287 Broadway vacate the building.”
Further, in April 2008, the defendants’ engineers, Goldstein Associates, issued a report which, inter alia, stated: “Our report concludes that the foundation of the south wall of 287 Broadway was undermined during excavation.” An affirmation filed by *244 the same engineers in support of the defendants’ cross motion for summary judgment acknowledged that the engineers had determined that “the movement and undermining of [plaintiffs building] occurred when the foundation contractor (Hunter-Atlantic) began underpinning the south-west corner. . . The movement of the building during excavation was caused by settlement due to undermining of the existing footings and loss of soil under the footing.”
Hence, the defendants not only admit that the excavation caused damage but that, while the building was being monitored, they failed to follow through on assurances to shore it, so that the DOB ultimately had to issue the vacate order. Regardless of the defendants’ allegations that the building was already out of plumb, that there were preexisting cracks in the south and west walls, and that the building lacked a lateral support system, the inescapable fact is that no DOB vacate order was issued until the defendants, on their own admission, caused the building to list further.
In any event, allegations that the building was in poor condition are irrelevant, and hence do not constitute a material issue of fact. The Coronet decision was the first time that the condition of an adjoining building was injected into a decision on absolute liability arising out of the provision at issue, but there is no precedent to support its inclusion in such fashion.
The provision at issue applies to adjoining structures, not adjoining structures that are in perfect condition, or adjoining structures that are new or without cracks. Moreover, the requirement in the provision that the excavator, once he/she is afforded a license to enter, inspect the adjoining buildings and property strongly suggests that it is the responsibility of the one causing the excavation to acquaint himself/herself with the possible risks involved in any particular project.
In my opinion, it is self-evident that the “poor condition” of a building cannot be evaluated as a contributing factor in such cases, otherwise the oldest buildings in New York would get the shortest shrift from excavators knowing that the more faults in a building, the less precautions need be taken. Indeed, the Dorrity Court enunciated precisely this view when it observed that the intent of the statute was to make owners aware of the “risk of injuiy” to adjoining structures, and of “the burden of protecting” them. (Dorrity, 72 NY at 311.) In effect, the Court’s warning was that the worse the condition of a building, the greater the burden on the excavator to protect it.
*245 Similarly incorrect and without precedent was the conclusion in Coronet that absolute liability may be imposed only after trial and determination that a defendant failed to take “adequate” precautions.[2] Simply put, this Court misread Harder Realty, the oft-cited Supreme Court decision in which that court conducted a thorough analysis of the precautions taken by the defendants. However, that particular analysis was undertaken in the context of ascertaining liability on a negligence theory. CHarder Realty, 64 NYS2d at 316.) Further underscoring the fact that an assessment of the “adequacy of precautions” is not required for the provision at issue is that the Harder court found that the excavators in that case had “performed a careful, workmanlike job in the excavation” and that “not even the plaintiffs witnesses or experts found fault with the quality or technical proficiency of the work.” (Id.) Yet, despite the superlative precautions taken, the Harder court imposed absolute liability because “during the period of the excavation the building had a lateral movement south of more than one inch” and the court found that the defendants’ activities were the proximate cause of the movement. (Id. at 315.)
Indeed, the plain language of the Code provision does not allow for any affirmative defense of reasonable precautions or adequate precautions taken. The language states that an excavator “shall, at all times and at his or her own expense, preserve and protect” adjoining structures. The unequivocal wording does not convey any suggestion that best efforts or reasonable efforts to protect and preserve will allow a defendant to evade absolute liability.
Finally, in Randall, defendants also cross-moved for leave to amend their answer to assert additional affirmative defenses and counterclaims against Randall and assert cross claims against Hunter as the excavator. Randall opposed the cross motion on the grounds that the proposed amendments lacked merit. The court denied the cross motion and further held that defendants could implead Hunter as a third-party defendant. Defendants subsequently did so. Thus, only the denial of leave to assert counterclaims against Randall remains on appeal.
*246 CPLR 3025 (b) provides that
“[a] party may amend his pleading, or supplement it by setting forth additional or subsequent transactions or occurrences, at any time by leave of court or by stipulation of all parties. Leave shall be freely given upon such terms as may be just including the granting of costs and continuances.”
Leave to amend should be granted, absent prejudice or surprise, where the proposed amendment is meritorious. (See Lettieri v Allen, 59 AD3d 202 [1st Dept 2009]; Matter of Salon Ignazia, Inc., 34 AD3d 821 [2d Dept 2006].)
281 Broadway and John Buck seek to amend the answer to assert claims relating to the ZLDA, a development and easement agreement entered into between the parties on March 2, 2006 for the purpose of the use of air rights. Among the claims defendants seek to raise are breach of contract allegations, particularly that Randall breached certain covenants under the ZLDA (for example, not taking any action adversely affecting the ability to develop the proposed construction, and not appearing in opposition to the developer in any action brought before certain boards or agencies) by seeking a TRO and an injunction. The court denied leave on the grounds that the ZLDA was not applicable to this action.
In my opinion, Justice Ramos ruled correctly since the plaintiff brought an action for a preliminary injunction to protect its building from further damage. As the plaintiff asserts, nothing in the ZLDA requires plaintiff to idly stand by and watch its building collapse.
Buckley and Abdus-Salaam, JJ., concur with Tom, J.R; Catterson and Freedman, JJ., dissent in a separate opinion by Catterson, J.
Order, Supreme Court, New York County, entered September 18, 2008, affirmed, without costs. Order, Supreme Court, New York County, entered January 29, 2009, reversed, on the law, without costs, to deny plaintiffs motion and grant defendants leave to amend their answer to assert counterclaims against plaintiff.

. Administrative Code § 27-1031 was amended effective July 1, 2008. The new equivalent provision, found in the New York City Construction Code (Administrative Code, tit 28, ch 33, § 3309.4 [“Excavation or filling operations affecting adjoining property”]), contains equivalent language except that the 10-foot depth requirement of the former provision has been removed. The new code also requires that no excavation work to a depth of 5 to 10 feet within 10 feet of an adjacent building or excavation over 10 feet anywhere on the site shall commence until the excavator documents the existing condition of all adjacent buildings in a preconstruction survey.

. Small surprise that subsequent decisions have parroted the “adequate” language of Coronet without explaining what is meant by adequate. (See Cohen v Lesbian & Gay Community Servs. Ctr., Inc., 20 AD3d 309 [1st Dept 2005]; Nestor v Congregation Beit Yaakov, 2007 NY Slip Op 33296[U] [Sup Ct, NY County 2007]; and 430 Owners Corp v King Sha Group, Inc., 2007 NY Slip Op 33675[U] [Sup Ct, NY County 2007].)